**DICKEY–JOHN CORPORATION, Plaintiff,**

v.

**Bob BERGLAND et al., Defendants,**

**Neotec Instruments, Inc., Intervenor Defendant.**

Civ. A. No. 77–2194.

United States District Court, District of Columbia.

Jan. 12, 1978.

**452**

Drexel D. Journey, Aaron J. Kramer, Schiff, Hardin & Waite, Washington, D. C., for plaintiff.

A. Patricia Frohman, Asst. U. S. Atty., Washington, D. C., for defendants.

Robert L. Ackerly, Neil H. Ruttenberg, Sellers, Connor & Cuneo, Washington, D. C., for intervenor-defendant.

MEMORANDUM

GASCH, District Judge.

Presently before the Court is plaintiff's motion for preliminary injunction restraining the performance of a contract awarded by the Department of Agriculture for the procurement of near-infrared reflectance ("NIR") instruments. Plaintiff requests the injunction until GAO rules on its protest regarding the Invitation for Bids ("IFB") underlying the contract and until the Court can consider the merits of plaintiff's claim. Plaintiff alleges that the IFB violated procurement statutes and regulations because it contained unnecessarily restrictive specifications that prevented plaintiff from bidding for the contract. The contract was awarded to Neotec, Inc., on December 30, 1977, and specifies that ninety-five NIR instruments be delivered by February 1, 1978, for use by the Federal Grain Inspection Service ("FGIS").

Plaintiff filed its complaint on December 28, 1977, seeking temporary and permanent injunctive relief against the opening of bids and subsequent award of the contract. The complaint also requests a declaration that the IFB violates applicable procurement law. Plaintiff's motion for a temporary restraining order was denied on December 28, and bids were opened revealing Neotec as the sole bidder. On December 29, 1977, plaintiff's motion for a temporary restraining order against award of the contract was denied. The contract was awarded to Neotec on December 30, and plaintiff filed its motion to restrain performance of the contract on January 5, 1978. The Court granted Neotec's motion to intervene as a defendant on January 5, and argument was heard on plaintiff's motion the following day in open Court.

For the reasons set forth briefly below, the Court concludes that plaintiff's motion for a preliminary injunction should be denied.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

On December 5, 1977, the Agricultural Marketing Service of the Department of Agriculture issued IFB No. 2–AMS–78(W) for the procurement of ninety-five NIR instruments. The instruments measure the protein content in wheat. The IFB specified that all ninety-five units must be delivered by February 1, 1978. It also specified that the instruments must have an eight wavelength capability, six wavelengths for the measurement of protein and moisture and two more wavelengths for the measurement of oil.[1]

The NIR instruments were procured for the use of the FGIS, and defendants have submitted affidavits explaining that the specifications reflected the minimal needs of FGIS.[2] FGIS is responsible for the establishment of standards for grain and the development of procedures for the inspection of grain.[3] For the past several years, FGIS has been evaluating NIR devices for the measurement of protein content in grain. In May, 1977, the Service decided that the infrared testing technique would be implemented on May 1, 1978.[4]

In line with this decision, FGIS began drafting during July, 1977, specifications for the procurement of NIR devices. The February 1, 1978, delivery date was deemed necessary to ensure that the program could

---

1. The eight wavelength specification was added to the IFB by Amendment No. 1. *See* Verified Complaint, Exhibit A–1. The amendment, although dated December 5, apparently was not issued until December 19. Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction, Exhibit E. As originally drawn, the IFB did not specify the wavelength range but required "an instrument on which the wavelength or electronic circuitry . . . can be varied with minor adjustments." *See* Verified Complaint, Exhibit A.

2. Affidavit of N. Gail Jackson, attached as Exhibit 2 to Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction.

3. *Id.* at ¶ 1.

4. *Id.* at ¶ 7. The industry was formally informed of this decision by a notice dated October 11, 1977. Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction, Exhibit B.

be fully implemented by May 1. The FGIS determined that two months were necessary for the training and licensing of employees who would use the devices and that a third month would be necessary as a dry-run period for locating and eliminating problems in the system.[5] The eight wavelength specification was included because the agency wanted a device capable of using the so-called "new-math" methodology that had been revealed to the industry in October, 1977. This methodology is capable of accurate protein measurements at low moisture levels and also is less sensitive to particular size.[6] FGIS, concluding that the "new-math" procedure constituted a vastly improved protein measurement methodology, decided that the program implemented on May 1, 1978, should have the "new-math" capability. When the IFB was issued, an eight wavelength instrument was the only means known for using the new methodology,[7] and thus the eight wavelength specification was included in the IFB.

Following review of the specifications drafted by FGIS, the contracting officer in the Department of Agriculture determined that a competitive IFB was justified because at least three possible sources for the procurement existed. These sources included: (a) Neotec, which eventually was awarded the contract; (b) plaintiff Dickey-john, which did not bid because it could not meet the February 1 delivery date for all items required, and (c) Technicon Corporation, which markets an NIR device produced by Dickey-john and which also did not bid because its device lacked the eight wavelength capability. The bid opening on December 28, twenty-three days after the issuance of the IFB, revealed Neotec as the sole bidder. After plaintiff's efforts to obtain a temporary restraining order failed, the contract was awarded to Neotec on December 30, and delivery of some of the units had already occurred at the time of the Court's hearing on January 6.[8]

■ Plaintiff's motion for a preliminary injunction must be measured against the principles enunciated in *Virginia Petroleum Jobbers Association v. FPC,* 104 U.S.App. D.C. 106, 259 F.2d 921 (1958). Four factors should be considered in determining whether preliminary injunctive relief is appropriate: the irreparability of injury to plaintiff in the absence of the injunction; the likelihood that plaintiff will prevail on the merits; the degree of harm to other parties as a result of the injunction; and the effect on the public interest of the Court's action. *See id.* at 925. The Court concludes that the facts of the instant action do not justify preliminary injunctive relief.

### I. *Existence of Irreparable Injury.*

■ Plaintiff claims that it will be irreparably injured if performance of the contract is not enjoined pending GAO's consideration of plaintiff's bid protest and the Court's hearing of plaintiff's complaint on its merits. Plaintiff urges that performance must be enjoined if the merits of its claim are not to become moot. Plaintiff argues that unless the Court considers its complaint on the merits and orders resolicitation under a rewritten IFB lacking the specifications that kept plaintiff from submitting a responsive bid, plaintiff will be effectively shut out from the expanding market for NIR devices. Plaintiff maintains that federal and state agencies will follow the lead of FGIS in selecting Neotec's device, with its particular specifications for protein measurement.

The Court finds this argument of irreparable injury unpersuasive. Plaintiff admits that its device could satisfy all specifications of the disputed IFB except the February 1, 1978, delivery date.[9] Thus, even assuming that the technical requirements in the IFB are adopted in future contracts, the Court is unable to perceive how award of

---

**5.** Affidavit of N. Gail Jackson, at ¶¶ 17–18.

**6.** *Id.* at ¶¶ 13, 15.

**7.** *Id.* at ¶ 13.

**8.** Affidavit of Aaron J. Kramer at ¶ 5(a), attached to Plaintiff's Amended Motion for Preliminary Injunction.

**9.** Verified Complaint ¶ 21.

the instant contract precludes plaintiff from fairly competing for the future contracts. Simply stated, plaintiff will win award of such contracts if it offers a lower price than its competitors and is prepared to meet the specified delivery requirements. Moreover, at oral argument counsel indicated that these new devices and techniques would probably initiate a $250,000,000 industry, providing plaintiff much opportunity to profit in the future.

Plaintiff, however, cites another form of irreparable injury that will occur unless the Court enjoins performance and preserves the possibility of ordering resolicitation as a remedy after a decision on the merits. Plaintiff correctly notes that its action for money damages as a disappointed potential bidder would not include recovery of lost profits, but would be limited to recovery of bid preparation costs. Thus, plaintiff's only adequate remedy for being improperly denied the opportunity to submit a responsive bid is a chance to bid after resolicitation. This argument, however, is not sufficient by itself to justify a preliminary injunction; the Court should not interfere with performance of the contract at this time unless there is a strong likelihood that plaintiff will prevail on the merits and resolicitation will be necessary.

## II. · *Likelihood of Success on the Merits.*

■ Plaintiff, claiming that the IFB violates procurement law in essentially two respects, asserts vigorously that it will prevail on the merits of its complaint. At the outset, it should be noted that plaintiff can only prevail if it shows

either that (1) the procurement official's decision on matters committed primarily to his own discretion had no rational basis, or (2) the procurement procedure in-

volved a clear and prejudicial violation of applicable statutes or regulations.

*Kentron Hawaii, Ltd. v. Warner,* 156 U.S. App.D.C. 274, 277, 480 F.2d 1166, 1169 (1973).

Plaintiff's first contention is that the IFB, which scheduled opening of bids only twenty-three days after issuance of the IFB, violated procurement regulations which require "sufficient bidding time." *See* 41 C.F.R. § 1–2.202–1(a) (1977). Generally, at least thirty days are allowed for submission of bids, *id.*; but less than thirty days is permitted when justified by special circumstances. *Id.* § 1–2.202–1(c). Thus, because the regulations do not absolutely forbid submission periods of less than thirty days, plaintiff's claim will succeed only if the contracting officer's choice of the early bid opening date lacked a reasonable basis. The Court concludes, however, that in view of the need for expediting delivery, the contracting officer's choice had a rational basis. The contracting officer acted reasonably in determining that contract award by early January was necessary if production and delivery of the units were to be assured by February 1. Moreover, even if plaintiff could show the bid opening date to be unreasonable, plaintiff would not be able to show any prejudice to it resulting from such expedited scheduling. Plaintiff has submitted no evidence indicating that its competitors obtained knowledge of the IFB's content before plaintiff did; [10] thus, all competitors were affected by the short period for submission of bids.[11]

■ Plaintiff's second contention is that the IFB violates procurement statutes and regulations mandating "full and free competition" in government bidding and prescribing unnecessarily restrictive specifica-

10. *See* Affidavit of Robert D. Rosenthal in Support of Neotec's Opposition to Plaintiff's Motion for a Preliminary Injunction at ¶¶ 19–20.

11. Plaintiff also complains that it did not receive a copy of the research report on the "new math" procedure referred to in the IFB until on or about December 20. Verified Complaint ¶ 20. The prejudice resulting from this fact is unclear. Plaintiff admits that its device had

eight wavelength capacity able to use the "new math" procedure. Furthermore, the record contains no evidence that plaintiff was denied any information provided to its competitors. In fact, the testimony of the contracting officer is to the contrary. Affidavit of Charles A. Wuenstel at ¶ 9, attached to Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction.

tions.[12] Plaintiff attacks the February 1, 1978, delivery date and the eight wavelength specifications as not based on the actual minimum needs of FGIS. Plaintiff recognizes that the IFB's specifications should not be upset unless the agency's determination that such specifications reflect its minimum needs is lacking any reasonable basis. *See, e.g., Jarrell-Ash Division of the Fisher Scientific Company,* Comp. Gen. B–185582 (January 12, 1977). The Court concludes that plaintiff has failed to rebut the reasonable explanation by FGIS that the specifications reflect its actual needs.[13] The February 1, 1978, delivery date is reasonably related to the May 1, 1978, date for full implementation of the infrared testing program.[14] Plaintiff offers no evidence disproving the reasonableness of the delivery specification but apparently argues that it must be unreasonable because it could only be met by Neotec. This argument cannot prevail; the record indicates that Neotec's ability to meet the delivery date resulted from its exercise of good business judgment and not from any unfair advantage given Neotec through advance knowledge of an unnecessarily restrictive delivery specification.[15]

### III. *Harm to Third Parties and Effect on the Public Interest.*

■ The Court's conclusion against granting a preliminary injunction is justified further because substantial harm will probably result to third parties from an injunction. Plaintiff emphasizes that it seeks an injunction only until GAO can consider its bid protest and the Court can decide the merits of plaintiff's claim. Yet, even with GAO acting on an expedited basis, at least three to four weeks would most probably be required before both GAO and

the Court can make their decisions. If plaintiff does not prevail and resolicitation is not ordered, which is likely, Neotec would be faced with serious difficulties in completing timely delivery. If plaintiff did prevail, resolicitation could not be completed until late February and full delivery would not occur until sometime in March.

Thus, interference by the Court with the performance of the contract may have either of two results: it would interfere with Neotec's ability to make delivery as scheduled, or it may force a termination of the FGIS plan to implement infrared testing on May 1. Either occurrence is undesirable; failure to meet the May 1 implementation date may well delay the program for another year.[16] This delay could impede FGIS in fulfilling its obligation to report to Congress on protein standards and measurement techniques.[17] It could also cause financial loss to those segments of the grain industry that have relied on expected implementation of protein testing in May, 1978. Clearly, none of these results would be in the public interest.

The Court concludes that plaintiff's motion for a preliminary injunction must be denied; consideration of the relevant factors shows that preliminary injunctive relief is not justified on the facts of this case.

---

**12.** *See* 41 U.S.C. § 253(a) (1970); 41 C.F.R. §§ 1–1.301–1, 1–1.307–1(b), (c) (1977).

**13.** *See* Jackson Affidavit, *supra* note 2.

**14.** Similarly, in view of the considerable improvement in protein measurement made possible by the "new-math" procedure, the agency acted reasonably in seeking the flexibility to use the procedure. Thus, the eight wavelength

specification cannot be deemed without a rational basis.

**15.** *See* Rosenthal Affidavit, *supra* note 10, at ¶¶ 26–27.

**16.** *See* Jackson Affidavit, *supra* note 2, at ¶ 10.

**17.** *See* United States Grain Standards Act of 1976, Pub.L. No. 94–582, § 24, 90 Stat. 2867.