**SOUTHERN TECHNOLOGIES, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 90–1868.**

United States District Court, District of Columbia.

Jan. 30, 1991.

Sam Zalman Gdanski, Spring Valley, N.Y., for plaintiff.

Daniel Bensing, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM AND OPINION

REVERCOMB, District Judge.

Plaintiff, a Florida corporation, was selected as a subcontractor by the general contractor on a government contract for the construction of certain alterations at the main steam plant of the Arnold Engineering Development Center (the Center) in Tennessee. Complaint ¶ 7. The steam plant is essential to rocket engine testing performed at the Center. Def. Memorandum at 1–2.[1] Plaintiff was to provide and install certain boiler equipment for the plant.

The general contractor was granted the contract in September 1989. Complaint ¶ 7. In February 1990, however, the government eliminated plaintiff from participation in the contract because the plaintiff had failed to provide the agency with adequate references, as required in the bid solicitation. Def. Ex. B. In April, plaintiff requested the Comptroller General to review the Army Corps' action in eliminating plaintiff from the project. Pl.Ex. A. The Comptroller General responded that plaintiff, as a subcontractor, had no standing to protest the contract. Complaint ¶ 11. The general contractor, meanwhile, replaced plaintiff with another subcontractor that was acceptable to the government. Def. Memorandum at 4.

■ In October, plaintiff brought this suit for declaratory and injunctive relief.[2] Plaintiff has requested that the government be enjoined from authorizing a new subcontractor to perform the contract and that the Court enjoin further performance of the contract. The plaintiff did not apply for emergency relief. Before the Court now is the plaintiff's application for a preliminary injunction and the defendant's Motion to Dismiss or for Summary Judgment.

■ Before considering the merits of the plaintiff's claims, the Court must point out that the contract at issue has been almost completely performed by the subcontractor

---

1. The plaintiff in opposing the government's Motion for Summary Judgment did not file a statement of material facts in dispute as required by Local Rule 108(h). Although the plaintiff did attach an unexecuted response to the affidavit submitted by the government in support of its motion, that response appears to be more of a legal argument than a factual rebuttal and does not clearly set forth the factual issues in dispute.

2. The plaintiff also seeks money damages. These damages arise, in part, from the plaintiff's claim that the government is liable for tortious interference with plaintiff's contractual relations with the general contractor. Such damages can not be recovered from the United States, however, because the FTCA expressly precludes a cause of action against the government for that tort. 28 U.S.C. § 2680(h). To the extent that other damages are sought concerning the contract at issue, the plaintiff has admitted that "any monetary damages it seeks ... will ultimately have to be adjudicated before the U.S. Claims Court." Pl. Opposition at 2. Accordingly, plaintiff's claims for monetary damages are not properly before this Court.

which replaced the plaintiff.[3] Accordingly, it is now virtually impossible for the plaintiff to show that it will suffer irreparable harm if performance of the contract is not stayed. Moreover, the potential for harm to the government, the contractors and the public is great. Nowhere in its pleadings does the plaintiff address these specific predicates for injunctive relief. Based on the insufficiency of the plaintiff's pleadings, and in light of the overwhelming evidence that the plaintiff is not entitled to injunctive relief, the Court must deny the plaintiff's application for a preliminary injunction.

The remainder of the plaintiff's case consists of a vague request for declaratory relief. Although the complaint is captioned as one for declaratory judgment, the plaintiff has not specifically pleaded the declaratory relief which it seeks. Presumably the plaintiff would have the Court declare the agency's action in eliminating the plaintiff from the contract and in permitting the participation of a different contractor to be invalid.

Plaintiff claims that two restrictions contained in the contract specifications and which apply to the subcontractor are unduly restrictive and, thus, violate that Competition in Contracting Act of 1984. The restrictions state:

> The manufacturer of the combustion control equipment must furnish a list of at least 50 installations of combustion control equipment of equal or greater complexity that has been installed and is in satisfactory operation within the last five years ending with the date of award of this contract.
>
> All equipment supplied under this paragraph shall be installed in strict accordance with the manufacturer's recommendations and under the direct supervision of a representative of the control manufacturer.

The plaintiff argues that the requirement that it supply a list of fifty references is *so* restrictive that it would result in "sole

source" procurement. Plaintiff asserted in its Complaint that no subcontractor would be able to satisfy this requirement. However, the contract manager who oversaw this procurement, David W. Strain, stated in his affidavit that three potential subcontractors provided the required references. Def. Ex. A ¶ 10.

Despite its contention as to the unreasonableness of the 50 reference requirement, the plaintiff did in fact supply such a list of references to the government. After checking the references provided by the plaintiff, the government notified the plaintiff that "only three of the references represented projects of the same type and complexity as required by the [contract condition]." Pl.Ex. E. In response to this letter, the plaintiff argues that in applying the contract requirement that the references represent projects involving "combustion control equipment of equal or greater complexity" the agency further restricted the requirement by requiring that the referenced projects be "of the same type and complexity." The Court is not persuaded that the latter characterization of the contract condition placed any additional restrictions on the reference requirement. Accordingly, the issue presented is merely whether the restriction as set forth in the solicitation for bids was unduly restrictive.

When a disappointed bidder challenges a restrictive specification in a bid solicitation, the government must demonstrate that the restriction is "reasonably related" to the minimum needs of the contracting agency. Once such a showing has been made, the burden then shifts to the plaintiff to show that the restrictions are "clearly unreasonable." *Dickey John Corp. v. Bergland*, 444 F.Supp. 451 (D.D.C. 1978). In this case the government has met its burden of proof through the statements of Mr. Strain. In his affidavit, Mr. Strain provides a detailed explanation of the reasons why the restrictive condition was considered a necessary component of the bid solicitation. He explains:

---

**3.** At the oral argument, counsel for the government represented that the contract is roughly

95% complete.

The factors which were considered in determining that 50 references were necessary included the critical nature of the steam plant under alteration to the operation of the Arnold Engineering Development Center, with the proper distribution of steam essential to the use of base research and testing facilities, as well as for general heating and other routine purposes. The boiler control system had to be a well-proven product, as the necessity to avoid unsatisfactory performance and downtime is critical to testing. The steam plant is an integral part of two highly complex rocket testing facilities which use steam produced by this plant during the actual test firing of solid fuel rocket motors. If the boiler controls do not properly operate during a rocket test, destruction to Steam Plant "a" and the loss of the test could result.

Def. Ex. A ¶ 12. This explanation establishes that the 50 reference requirement was reasonably related to the government's legitimate concerns for ensuring the proper installation of equipment essential to very important and expensive rocket testing conducted at the Center.

The government having met its burden of proof, the burden shifts to the plaintiff to show that the 50 reference requirement is clearly unreasonable. The only arguments raised by the plaintiff in this regard have already been considered and addressed by the Court: that the condition constituted "sole source" procurement and that the government further restricted the requirement in applying it to the plaintiff's list of references. Because the Court has found both of these arguments to be without merit, the plaintiff has failed to establish that the reference requirement is clearly unreasonable.[4]

For the foregoing reasons, the plaintiff's Application for a Preliminary Injunction is DENIED and the government's Motion for Summary Judgment is GRANTED.

---

**4.** In support of its argument that the fifty reference requirement was unduly restrctive, the plaintiff has cited a decision of the Comptroller General captioned *In re Southern Technologies, Inc.* No. B–239431 (Aug. 31, 1990). In that case, the Comptroller General found that the government's concerns for the continuous operation and maintenance of the boiler system at Wurtsmith Air Force Base did not justify the contract requirement that the bidder be the manufacturer of the equipment to be installed. That case can be distinguished from the current case in two respects. First, the restrictive requirement here is more reasonably related to the government's concerns for a reliable system. Here the government is not requiring that the contractor be a manufacturer but merely that the contractor provide references for previous installations of its equipment. Second, the government's concerns for a reliable system are heightened in this case, where the boiler equipment is essential to a very important and costly rocket testing program.