**INTERNATIONAL MAILING SYSTEMS DIVISION OF BETTER PACKAGES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**Pitney Bowes Inc., Defendant-Intervenor.**

No. 523–84C.

United States Claims Court.

Nov. 30, 1984.

Leslie H. Wiesenfelder, Washington, D.C., for plaintiff; Jonathan B. Hill, Washington, D.C., of counsel.

Stephen R. Bergenholtz, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant.

David B. Apatoff, Washington, D.C., for defendant-intervenor Pitney Bowes Inc., James M. McHale, of counsel.

## OPINION

MARGOLIS, Judge.

The plaintiff originally sued in the U.S. District Court for the District of Columbia seeking a temporary restraining order and a preliminary injunction to change a procurement solicitation issued by the Postal Service. That Court transferred the case here. Since the defendant has stipulated that it will not award the contract at issue until November 30, 1984, this Court construes the complaint as a suit for a permanent injunction.

The parties have cross moved for summary judgment. The defendant-intervenor opposes the plaintiff's motion. After considering the entire record and hearing oral argument, this Court grants the defendant's motion for summary judgment and denies the plaintiff's motion for summary judgment.

## FACTS

The parties have not contested the following facts:

On January 5, 1984 the United States Postal Service (USPS) issued Solicitation No. 104230–84–B–0013 requesting offers to supply 3,000 postage meters. Although the USPS was willing to accept either meters that print on gummed tape or meters that print on pressure sensitive tape, the solicitation contained the following evaluation factor, which is the subject of this litigation:

The Postal Service has performed a study to compare the cost of using gummed paper tape against pre-cut pressure sensitive labels. The result is that the use of postage meters that operate with pre-cut pressure sensitive labels adds $420 to the use cost of the meter over the estimated 10 year life. Therefore, the Postal Service must add $1,260,000 to all proposals offering this type of label during the proposal evaluation process.

The plaintiff, International Mailing Systems, Division of Better Packages, Inc., (IMS), sells the Hasler Model 204B meter, which prints pressure sensitive postage labels to be affixed to mail. The Hasler meter can also print directly on some envelopes. IMS had earlier offered this meter to the USPS under a 1981 solicitation, which added no evaluation factor to the bid price. In the 1981 procurement the USPS had originally requested only meters that print on gummed tape, but one day before the bids were due the Postal Service changed its specifications to permit IMS to bid. The defendant-intervenor Pitney Bowes Inc., the only other bidder, then

lowered its own bid by $302,000 and won the contract. Pitney Bowes manufactures a meter that prints on gummed tape.

As early as 1981 a program manager in the Postal Service's Engineering and Technical Support Department (E & TSD) knew that pressure sensitive tape costs more than gummed tape. Deposition of John DeRosa at 15–17 (July 31, 1984). In March of 1983 the E & TSD began to calculate the cost difference between the types of tape. *Id.* at 25–26. *See also* Plaintiff's Exhibit 8 (attached to the deposition). On April 25, 1983 a vice-president of Pitney Bowes wrote to the head of E & TSD:

> [W]e have recently learned that the Postal Service is considering the purchase of an additional quantity of postage meter bases. In order to avoid the inequity of the last procurement, I would like to point out the impact on the Postal Service of purchasing machines which use pressure sensitive tape for indicia printing.

Letter of Robert J. Pascal to W.J. Chapp. Pitney Bowes estimated that the USPS would spend over $6 million more for pressure sensitive tape than for gummed tape over the ten year life of 3,000 machines. *Id.* After March of 1983 both Pitney Bowes and IMS discussed with E & TSD the cost difference between the two types of tape. DeRosa Deposition at 27–32.

On June 23, 1983 the E & TSD recommended excluding pressure sensitive tape meters from the next procurement on the ground that the tape would cost an extra $42 per meter each year, or $420 over the meter's ten year life. The Contracting Officer rejected this recommendation, but he had no discretion to ignore the cost difference between gummed and pressure sensitive tape. Deposition of Peter Schwind at 11, 23 (July 31, 1984). He therefore added an evaluation factor of $1,260,000 to the solicitation.

On January 30, 1984 IMS protested the evaluation factor, alleging that the Postal Service: 1) ignored the greater reliability of the Hasler machine; 2) failed to consider price reductions for large purchases of tape; and 3) failed to discount the extra $42 per year per meter to its present value.

After receiving this protest, the Contracting Officer asked E & TSD to review its study. On review the E & TSD reduced its estimate of annual tape use after considering data from a more recent fiscal year, and discounted annual tape costs to their present value. The Contracting Officer accepted the E & TSD's new evaluation factor of $204 per meter in his response to the IMS protest. He sent that response to the USPS's Associate General Counsel on February 9, 1984. The Postal Service's Procurement Technical Support Division (PTSD) analyzed IMS's technical arguments and failed to find any reason to reject the Contracting Officer's recommendation.

From February 13 to March 26, 1984 both IMS and Pitney Bowes submitted exhibits, arguments, and rebuttal to the Associate General Counsel. On April 27, 1984 he denied the IMS protest. The Contracting Officer changed the evaluation factor to $204 per meter, or $612,000 for 3,000 meters, and set May 18, 1984 as the new bid date.

On May 8, 1984 IMS requested reconsideration of the protest decision, arguing that IMS machines can print on some envelopes directly, thus saving tape. Since the USPS calculated the evaluation factor assuming that the IMS and Pitney Bowes machines use the same amount of tape, the evaluation factor must be irrational, so IMS reasoned. In a memorandum dated May 30, 1984 the PTSD reviewed and rejected this argument, and on May 31, 1984 the Contracting Officer recommended denying the request for reconsideration. On July 2, 1984, after considering rebuttal from IMS, the Associate General Counsel denied the request.

IMS filed a complaint for declaratory and injunctive relief in the U.S. District Court for the District of Columbia on July 6, 1984. Finding that it lacked jurisdiction, the District Court transferred the case here on September 21, 1984.

## DISCUSSION

### A. *Standard of Review*

In pre-award contract cases, this Court has "exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief." 28 U.S.C. § 1491(a)(3) (1982).* Congress, however, expects the Court to "utilize the authority conferred upon it by this section only in circumstances where the contract, if awarded, would be the result of arbitrary or capricious action by the contracting officials...." S.Rep. No. 275, 97th Cong., 1st Sess. 23, *reprinted in* 1982 U.S.Code Cong. & Ad.News 11, 33.

█ Therefore, to persuade this Court to change a procurement decision, an aggrieved bidder must demonstrate with clear and convincing evidence that the agency's determination either: 1) lacks any rational basis or 2) violates applicable statutes or regulations to the bidder's prejudice. *E.g., Big Bud Tractors, Inc. v. United States,* 2 Cl.Ct. 188, 193 (1983) (citing *Kentron Hawaii, Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C.Cir.1973)); *Baird Corp. v. United States,* 1 Cl.Ct. 662, 664 (1983) (citing *Princeton Combustion Research Laboratories, Inc. v. McCarthy,* 674 F.2d 1016, 1021–22 (3rd Cir.1982); *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1301, 1306 (D.C.Cir.1971)). IMS alleges both that the evaluation factor lacks a rational basis and that USPS officials violated procurement regulations.

---

* Before the U.S. District Court the defendant argued that only the U.S. Claims Court can hear pre-award challenges to procurement solicitations. Reversing its position, the defendant now argues that regulations governing the procurement process create no contractual rights. Since the plaintiff can assert no contractual rights, the Claims Court lacks jurisdiction. The defendant has moved for dismissal.

The Court of Appeals for the Federal Circuit has not yet resolved the question whether this Court has jurisdiction over such pre-award suits. *Compare, e.g., Ingersoll-Rand Co. v. United States,* 2 Cl.Ct. 373 (1983) (no jurisdiction) *with, e.g., A.C. Seeman, Inc. v. United States,* 5 Cl.Ct.

### B. *Rational Basis*

IMS repeats here the argument it made in its May 8, 1984 request for reconsideration: The USPS study assumes that the IMS and Pitney Bowes machines use the same amount of tape; the IMS machine can print postage without tape; therefore, the USPS study is invalid. The Contracting Officer and Associate General Counsel rejected this argument, relying on the May 30, 1984 report by the PTSD, which concluded that the Postal Service would imprint only a small percentage of letters directly.

To rely on that report was arbitrary and capricious for three reasons, according to IMS. First, the PTSD itself acknowledged that the report contained errors. In an addendum dated June 13, 1984 the PTSD admitted that it had no firsthand knowledge of the IMS machine when it wrote its earlier report. In the meantime, two PTSD engineers had visited the Cherry Hill, New Jersey Post Office to test an IMS meter in service there. Although the PTSD then corrected its errors, it did not change its conclusion.

Second, an IMS survey of 140 offices showed that 30% of the gummed postage labels affixed to mail were used not on packages but on letters, which could be imprinted directly instead. The PTSD rejected that figure, assuming that IMS had surveyed the mailing rooms of private businesses. IMS asserts that it surveyed 140 U.S. Post Offices.

Third, IMS contends that the PTSD relied on guesswork, and cites the following portion of the PTSD report:

---

386 (1984) (Claims Court does have jurisdiction) (citing *Electro-Methods, Inc. v. United States,* 728 F.2d 1471 (Fed.Cir.1984); *ATL, Inc. v. United States,* 736 F.2d 677 (Fed.Cir.1984)). This Court cannot resolve this question without further briefing and argument.

But since the defendant has moved in the alternative for judgment on the merits and since the plaintiff has no case on the merits, this Court will defer its decision on jurisdiction in the interest of judicial economy. *See, e.g., Gilmore v. United States,* 6 Cl.Ct. 323, 327 (1984) (citing *Travis v. United States,* 199 Ct.Cl. 67, 70 n. 1 (1972)).

[O]ur office *does not know* what percentage of the meter impressions could be directly imprinted using USPS owned IMS meters. Given the postal policy on the imprinting of letters and the reported letter thickness restriction, we *feel* that it would only be a small percent. As a *guess*, we would say perhaps 5% to 10%.

Letter of Richard C. Mautner to Peter J. Schwind at 3 (PTSD report) (May 30, 1984) (emphasis added).

IMS builds its argument upon the discussion of agency arbitrariness in *Central Florida Enterprises, Inc. v. FCC*, 598 F.2d 37, 50 (D.C.Cir.1978) *cert. dismissed* 441 U.S. 957, 99 S.Ct. 2189, 60 L.Ed.2d 1062 (1979): "[W]e are told that the conclusion is based on 'administrative "feel."' Such intuitional forms of decision-making, completely opaque to judicial review, fall somewhere on the distant side of arbitrary." The PTSD report is intuitional, so argues IMS. Therefore by relying upon it, the USPS arbitrarily and capriciously ignored the IMS meter's ability to print postage directly on envelopes.

This argument fails for two reasons. First, the USPS had evidence to support its conclusion. Second, even if the USPS could directly print postage on 30% of its mail, the agency requested a meter that prints *on tape*.

To support its contention that the USPS could directly imprint 30% of its mail, IMS offers an unverified survey conducted by its own employees. In response, the USPS argues that its policy is to sell stamps for letter postage. Section 144.735 of the Domestic Mail Manual provides:

.735 Affixing Meter Stamps. Sell meter postage for packages or parcels of all classes and for *occasional letters presented by mailers of parcels*. Affix meter stamps to the mail in mailer's presence. *Do not use a meter for quantities of letters or circulars.*

(emphasis added). Since this regulation governs Post Office practice, the PTSD could reasonably conclude that USPS window clerks would frank very few letters with a meter, whether that meter prints labels or imprints postage directly. The PTSD reported that direct imprinting would save the Postal Service an uncertain, insignificant amount. Relying on that report, the Contracting Officer properly ignored those savings when he calculated the evaluation factor. *See, e.g., To Fried, Frank, Harris, Shriver, & Kampelman*, 51 Comp.Gen. 352, 358 (Dec. 6, 1971).

■ But the USPS had a more important reason to ignore direct imprinting: it requested a meter that prints on tape. For the Postal Service, the direct imprinting ability of the IMS meter is an unnecessary feature. Even if the USPS could imprint 30% of its mail directly, as IMS asserts, the USPS is not obliged to imprint 30% of its mail directly. The agency decided that a tape meter meets its minimum needs. It had some reason for that decision. This Court will not question that decision. *See, e.g., Dickey-john Corp. v. Bergland*, 444 F.Supp. 451, 456 (D.D.C.1978) (Gasch, J.).

### C. *Regulations*

IMS argues that USPS officials ignored three duties imposed by USPS regulations: 1) the duty to foster competition; 2) the duty to use reasonable skill and judgment; and 3) the duty to calculate evaluation factors with reasonable certainty.

#### 1. PCM § 3–101(d)

■ Section 3–101(d) of the Postal Contracting Manual (PCM) provides that "[n]egotiated purchases shall be on a competitive basis to the maximum practical extent." According to IMS, the Contracting Officer violated this regulation by considering only the cost of tape when he calculated the evaluation factor. But other costs—like the cost of "down time" or electricity—were either too small or too uncertain to include in the evaluation factor. *See, e.g.,* Affidavit of John DeRosa (IMS machine uses more electricity than Pitney Bowes machine, but extra cost was not included in evaluation formula).

IMS also implies that the USPS fostered monopoly instead of competition and that it

added the evaluation factor to protect Pitney Bowes. IMS points to the April 25, 1983 letter of Robert J. Pascal to the E & TSD. But IMS offers no testimony and no affidavits to support its charges. In response, the Program Manager of E & TSD has testified under oath that he began studying the cost differences between the types of tape before the Pascal letter arrived. Furthermore, Pitney Bowes first argued that the USPS should restrict the procurement to gummed tape meters. Then Pitney Bowes pressed for an evaluation factor of $569.16 per meter. The Postal Service added a factor of only $204 per meter. IMS's charges have no merit.

2. PCM § 3-801.2(a)

[redacted] In directing a procurement for the Postal Service, "[t]he contracting officer shall exercise reasonable care, skill, and judgment and shall avail himself of all the organizational tools ... necessary to accomplish the purpose...." PCM § 3-801.-2(a). The Contracting Officer testified that he did not analyze the evaluation factor independently (Schwind Deposition at 8); that he knew little about postal meters (*id.* at 13); and that he was unaware of any operational characteristics of either machine that would save money for the USPS (*id.* at 13-14). Therefore, IMS argues, the Contracting Officer failed to use reasonable skill and judgment. But a contracting officer need not be an expert in the engineering details of all the equipment he procures. *Id.* at 5-8, 28. In this case, the Officer consulted the technical experts of the PTSD and relied in good faith on their conclusions.

3. PCM § 2-201(a)(18)

[redacted] If the USPS wishes to consider costs other than bid prices when it evaluates bids, "such factors must be identified and included [in the total evaluation formula]." PCM § 2-201(a)(18). The Comptroller General has established the standard under which the USPS reviews evaluation factors:

> [W]here ... evaluation factors ... can be described and evaluated with reasonable certainty we have held that they properly may be included in the ... evaluation formulas. *See generally* B-151177, June 17, 1963. Conversely, when those factors cannot be described and evaluated with reasonable certainty, we have held that the ... evaluation formula should not contain those factors. *See, e.g.,* 33 Comp.Gen. 108 (1953).

*In re Remington Rand Corporation,* 82-1 CPD ¶ 408 at 13 (May 3, 1982).

IMS argues that the USPS did not calculate the evaluation formula with reasonable certainty because USPS considered only the cost of tape, and the IMS machine uses less tape if the operator imprints mail directly.

IMS's argument undermines its own position. If any factor in this procurement cannot be described with reasonable certainty, it is the volume of mail that USPS clerks might imprint directly. The cost of tape, however, is ascertainable from market prices and suppliers' quotations. The USPS calculated the cost difference between gummed and pressure sensitive tape with reasonable certainty. *See* Letter of Ray H. Morgan to Frank Hansen (E & TSD study) (Feb. 8, 1984).

CONCLUSION

For the reasons given, the Court grants the defendant's motion for summary judgment and denies the plaintiff's motion for summary judgment. The Clerk will dismiss the complaint.