**COMMERCIAL ENERGIES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–300 C.**

United States Claims Court.

April 16, 1990.

Gregory Kellam Scott, Denver, Colo., for plaintiff.

Martha H. DeGraff, Washington, D.C., with whom were Stuart M. Gerson, Asst. Atty. Gen., and David M. Cohen, Director, for defendant.

## OPINION

RADER, Judge.

In this bid protest action, plaintiff contests the application of a small disadvantaged business (SDB) preference to a United States Air Force (Air Force) contract for the supply of natural gas to Ellsworth Air Force Base, Minot Air Force Base, and Cavalier Air Force Station. Plaintiff, Commercial Energies, Inc. (CEI), protests that the Air Force did not apply the preference to all of the line items on which it intends to base its award. Defendant responds that the Air Force applied the preference factor properly.

After an extensive and enlightening oral argument, this court grants plaintiff's cross-motion for summary judgment and denies defendant's motion. Accordingly, this court prohibits the Air Force from awarding the contract at issue under the evaluation preference procedure as employed.

## FACTS

Plaintiff is a SDB under Federal Acquisition Regulations. 48 C.F.R. § 219.7001 (1988). According to Department of Defense procurement regulations, an SDB receives an evaluation preference, which increases by 10% either the total price or particular line items of all non-SDB bids. 48 C.F.R. § 219.7001.

### The Request for Proposals

On June 30, 1989, the Air Force issued a Request for Proposals (RFP) No. F39601-89-R0016 to supply natural gas at three facilities. The RFP contained four line items: the Supply Adjustment Factor (the SAF), the Transportation Adjustment Factor (the TAF), the Supply Index Price (the SIP), and the Williston Basin Interstate Index Price (the WBI). The RFP provided that these four line items, when added together, constituted the total contract price. The RFP stated that "[a]ward of a contract ... will be made to the technically qualified, responsible Offeror whose proposal offers the lowest total price for all

locations." Defendant's Motion for Summary Judgment, filed April 10, 1990 (Def. Mot.), Appendix (App.), at 15.

The RFP defined with particularity each of the line items. The SIP is "the basis for the Government's ... natural gas purchase price." Def.Mot., App., at 5. The RFP provided that the cost for natural gas supplied under the contract in any given month would be determined by the price index contained in *Inside FERC's Gas Market Report* (McGraw Hill, pub.). Consequently, the SIP line item would fluctuate throughout the contract period. For the purpose of computing a bid price, however, the RFP instructed bidders to assume a natural gas unit cost of $1.52. To reach a bid for the SIP line item, the bidder then would multiply the unit cost by the estimated quantity of gas to be supplied under the contract. *See* Def.Mot., App., at 13, 22.

The SAF line item effectively permits bidders to modify the SIP "to reflect that offeror's expected variance (if any) from the indexed [market] price." Def.Mot., App., at 5. The bidder may include a positive, negative, or zero dollar amount, depending on whether he anticipates charging a price that is higher, lower, or no different than the prevailing market.

According to the RFP, the WBI line item is "the basis for the Government's payments to the offeror for the provision of ... pipeline transportation ... to the applicable Air Force city gate." Def.Mot., App., at 5. This line item reflects the gas transportation rate charged by the Williston Basin Interstate Pipeline Company. The RFP instructed bidders to assume a unit cost for transportation of $.52405. Def.Mot., App., at 13. To reach a bid for the WBI line item, the bidder would multiply the unit cost by the estimated quantity of gas to be transported under the contract. *See* Def. Mot., App., at 13, 22.

The TAF line item permits bidders to modify the WBI "to reflect either discounts from the otherwise-applicable maximum WBI tariff rate or payments to an inter-state pipeline that an offeror desires to use to deliver the supply gas...." Def.Mot., App., at 5. Like the SAF, the TAF can be a positive, negative, or zero dollar amount, depending on the amount of savings or additional costs that the contractor expects to pass on to the Air Force.

In sum, then, the Air Force required each contractor to bid as a baseline the same market prices for the supply and transportation of natural gas. Through the SAF and TAF line items, however, bidders could adjust the market price to reflect any variance from the market rate. Bidders thus could figure their profit margins into these adjustable line items.

At first, the RFP did not contain a 10% evaluation preference clause as required by 48 C.F.R. § 219.7007. Plaintiff informed the contracting officer (the CO) of this oversight. The CO thereafter issued Amendment 0002 to the RFP, which provided that the Air Force would apply the 10% preference only to the SAF and TAF line items.

### The CEI Bid Protest

On or about October 25, 1989, plaintiff filed its best and final offer to the Air Force. At about the same time, plaintiff also filed a bid protest with the General Accounting Office (the GAO) to challenge the Air Force's application of the 10% preference to the SAF and TAF line items only. Plaintiff asked the GAO to direct the Air Force to apply the preference to all four line items constituting the total bid amount for non-SDB bidders.

Instead of scheduling an evidentiary hearing, the GAO invited plaintiff to participate as an interested party in the Hudson Bay bid protest.[1] Hudson Bay previously had filed a protest challenging the Air Force's application of the evaluation preference in another natural gas solicitation. According to Hudson Bay, the Air Force inappropriately limited application of the evaluation preference to the SAF and TAF

---

1. At no time did GAO grant plaintiff a hearing on its protest. Instead GAO lumped plaintiff's protest together with the Hudson Bay protest.

line items. The GAO invited plaintiff to participate in these proceedings because it believed that CEI's claim mirrored Hudson Bay's protest.

Plaintiff attended the Hudson Bay conference, but the GAO did not permit it to raise any matters specifically involving the CEI solicitation. Thus, in its subsequent protest submissions on December 11, 1989, and January 16, 1990, plaintiff endeavored to distinguish the facts of the Hudson Bay protest from its own situation.

Plaintiff contended that the Hudson Bay solicitation was different. According to plaintiff, the Air Force appropriately limited application of the preference factor in the Hudson Bay award to the SAF and TAF line items. Because the RFP protested by Hudson Bay contained only two line items, the Air Force properly applied the evaluation preference to those two line items only.[2] Unlike the Hudson Bay solicitation, however, plaintiff's RFP bases award on total cost and includes four line items, not just the SAF and TAF. Thus, plaintiff contends that application of the evaluation preference to all four line items in this case, not just to the SAF and TAF, is consistent with the result in the Hudson Bay bid protest.

On February 5, 1990, the GAO approved the Air Force's application of the evaluation preference to Hudson Bay. Two days later, the GAO rejected plaintiff's claim on similar grounds. The GAO stated that the issues raised by plaintiff were identical to the Hudson Bay protest. Therefore, the GAO applied the same reasoning to both. The GAO reasoned that the SIP and WBI merely were "pass-through" amounts over which the bidders had no control.

### District Court Proceedings

In March 1990, after its unsuccessful protest to the GAO, plaintiff filed an action in federal district court to enjoin the Air Force from awarding the contract. *Com-*

*mercial Energies, Inc. v. Cheney,* Civ.Act. No. 90–F–369 (D.Colo.1990). Plaintiff also asked the court to order the Air Force to reselect a low bidder by applying the evaluation preference to all four line items of non-SDB bids.

The district court dismissed plaintiff's complaint for lack of jurisdiction. The court concluded that the United States Claims Court has exclusive jurisdiction to grant declaratory and injunctive relief in connection with pre-award contract claims. 28 U.S.C. § 1491(a)(3) (1982).

### Claims Court Action

On April 5, 1990, plaintiff filed a complaint and requested the United States Claims Court to enjoin the Air Force from awarding the contract on the grounds that the Government improperly applied the 10% evaluation preference. Plaintiff's complaint also seeks a judgment requiring the Air Force to apply the preference to all four line items listed in the RFP. Specifically, plaintiff asked the court to issue a *nunc pro tunc* order requiring the Air Force to reselect a low bidder by applying the evaluation preference to the total cost submitted by each non-SDB bidder. Upon filing its complaint, plaintiff informed the court that it intended to file a request for a temporary restraining order pursuant to RUSCC 65 in the near future.

On April 6, 1990, plaintiff filed its request for a temporary restraining order. Due to the hard work and cooperation of the Department of Justice and the Air Force, the parties managed to avoid the need for a hearing on plaintiff's restraining order request. The Air Force agreed not to award the contract until after the close of business on Monday, April 16. The Justice Department and plaintiff further agreed to file cross motions for summary judgment to facilitate resolution of all rele-

---

**2.** At oral argument, the parties contested whether the Hudson Bay RFP contained two line items or four as in plaintiff's RFP. Plaintiff produced documentation before the GAO in which the Air Force agreed that the Hudson Bay RFP contained two line items. The Air Force

considered the other items " 'non-line item' costs as they were the same for all offers and the offerors had no control over them." Memorandum for the Office of the General Counsel, U.S. General Accounting Office, Nov. 21, 1989, at 2 of the *"Statement of Facts and Findings."*

vant factual and legal issues by Friday, April 13.

The parties' cross motions for summary judgment raise two principal issues. First, what standard should this court use to review the Air Force's decision to apply the evaluation preference to the SAF and TAF line items only? Second, does the Air Force's decision meet this standard? After careful review of the parties' papers and oral argument on Friday, April 13, this court denies defendant's motion for summary judgment and directs the Air Force to apply the preference factor to all line items on which award may be made.

### DISCUSSION

#### Jurisdiction

■■■ As a general matter, the Claims Court lacks jurisdiction to grant declaratory and injunctive relief. *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). Congress, however, carved out an important exception to this rule. Specifically, the Claims Court has exclusive jurisdiction to grant declaratory and injunctive relief in pre-award contract controversies. The Claims Court's organic act states:

> To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief.

28 U.S.C. § 1491(a)(3).

■■ Plaintiff's complaint is within the exclusive jurisdiction of this court. Plaintiff has asked this court to enjoin the Air Force from awarding the contract at issue under an application of the SDB evaluation preference which focuses solely on the SAF and TAF line items. Plaintiff similarly has requested an order requiring the Air Force to reselect the low bidder by applying the SDB evaluation preference to the total bid price of each non-SDB. Such relief is within the peculiar province of the Claims Court. Thus, this court may address the merits of the parties' summary judgment

motions. This court, however, does not order the remedy sought by plaintiff.

#### Summary Judgment

■■ Both parties move for summary judgment under RUSCC 56(b). When no material facts are in dispute, RUSCC 56 authorizes this court to resolve issues as a matter of law. *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144 (Fed.Cir. 1983). When evaluating the merits of summary judgment motions, this court must resolve reasonable factual disputes against the movant. *Mingus Constructors v. United States*, 812 F.2d 1387, 1391 (Fed. Cir.1987). Mere denials, speculation, or bald assertions do not create an evidentiary conflict. *Barmag Barmer Maschinenfabrik AG v. Muratta Mach., Ltd.*, 731 F.2d 831, 836 (Fed.Cir.1984). Only disputes over facts that might actually affect the outcome of the case prevent an entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Substantive law identifies material disputes of fact. *Id.* at 248, 106 S.Ct. at 2510.

In this case, no genuine disputes of material fact preclude the entry of summary judgment as a matter of law. Plaintiff and defendant agree that CEI is an SDB. The parties agree that plaintiff may receive a 10% evaluation preference. Both parties state that the Air Force applied the evaluation preference to two line items only, not to the four line items bid by each non-SDB.

The parties disagree about the applicability of the Hudson Bay ruling to the CEI protest, the impact of contract language stating that an award will be made on the basis of lowest total cost, and the proper interpretation of 48 C.F.R. § 219.7001. These matters, however, are legal rather than factual disputes, and therefore do not impede the issuance of summary judgment.

#### Standard of Review

■■ In evaluating the Air Force's decision to apply the evaluation preference to two line items only, this court employs a deferential standard of review. Congress envisioned the Claims Court intervening in

pre-award decisions only where award "would be the result of arbitrary and capricious action by the contracting officials." *International Mailing Sys. Div. of Better Packages, Inc. v. United States*, 6 Cl.Ct. 762 (1984), quoting S.REP. NO. 275, 97th Cong., 1st Sess. 23 (1982). In simple terms, courts should not substitute their judgments for pre-award procurement decisions unless the agency clearly acted irrationally or unreasonably. *Baird Corp. v. United States*, 1 Cl.Ct. 662 (1983); *see also, Princeton Combustion Research Laboratories, Inc. v. McCarthy*, 674 F.2d 1016, 1021–22 (3d Cir.1982); *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289 (D.C.Cir.1971).

■ This court may invalidate a pre-award action where the agency employed procurement procedures which violated applicable statutes or regulations and thereby denied a bidder impartial consideration. *CACI Field Servs., Inc. v. United States*, 13 Cl.Ct. 718, 725–26 (1987), *aff'd*, 854 F.2d 464 (Fed.Cir.1988).

■ In this case, the Air Force conducted its affairs in reliance upon the determinations of the GAO. The GAO "plays an important role in the resolution of contested procurement decisions." *Honeywell, Inc. v. United States*, 870 F.2d 644, 647 (Fed.Cir.1989). While the Air Force was not bound by the GAO's decision, "Congress contemplated and intended that procurement agencies would follow the Comptroller General's recommendation." *Honeywell*, 870 F.2d at 648. Consequently, this court shall not upset the Air Force's decision to rely on the GAO's conclusions absent a showing by plaintiff that the GAO acted unreasonably. The United States Court of Appeals for the Federal Circuit recently explained:

> Congress viewed an agency's failure [to follow the Comptroller General's recommendation] as sufficiently unusual as to require the agency to report such non-compliance to the Comptroller General and to require the latter annually to inform Congress of any instances of non-compliance. In these circumstances, a procurement agency's decision to follow the Comptroller General's recommenda-

tion ... was proper unless the Comptroller General's decision itself was irrational.

*Honeywell*, 870 F.2d at 648.

In sum, this court must review the GAO's conclusions regarding the application of the evaluation preference to ascertain whether the Air Force's procurement decision was rational and reasonable. Only if, on the record as a whole, the GAO's determination is irrational can this court presume to invalidate the Air Force's procurement action. If the GAO did not comply with the statutes and regulations governing SDB preferences, however, its actions are irrational.

### SDB Evaluation Preference: Creation and Purpose

In November 1986, Congress enacted provisions setting goals for minority participation in Government contract work. Department of Defense Authorization Act of 1987, Pub.L. No. 99–661, § 1207, 100 Stat. 3816, 3973. Congress declared:

> [A] goal of 5 percent of [funds obligated for contracts entered into with the Department of Defense] shall be the objective ... for contracts and subcontracts entered into with ... small business concerns ... owned and controlled by socially and economically disadvantaged individuals....

100 Stat. at 3973.

To meet the minority contracting goal, Congress instructed the Secretary of Defense (Secretary) to use "his utmost authority, resourcefulness, and diligence." 100 Stat. at 3973. Further, Congress specifically authorized the Secretary to deviate from normal competitive contracting procedures:

> To the extent practicable and when necessary to facilitate achievement of the 5 percent goal ... the Secretary of Defense may enter into contracts using less than full and open competitive procedures ... but shall pay a price not exceeding fair market cost by more than 10 percent....

*Id.* at 3974.

Congress directed the Department of Defense to establish a contract goal for mi-

norities. 100 Stat. at 3973. Congress wanted the Secretary of Defense to use all resources, even less than competitive measures, to secure increased minority and SDB participation. As the scope of this delegation suggests, Congress directed the Secretary of Defense to adopt a meaningful and effective preference for minority contractors.

Pursuant to its statutory charge from Congress, the Department of Defense promulgated regulations establishing an evaluation preference for small disadvantaged businesses. The declaration of policy states:

> In furtherance of the Department of Defense objectives and initiatives undertaken to award acquisition in all industrial categories in which small disadvantaged businesses (SDBs) have not dominated and to meet the five percent goal for SDBs ... offers from SDB concerns shall be given an evaluation preference...."

48 C.F.R. § 219.7000.

Under the evaluation preference scheme, the contracting agency adds 10% either to the total offered price or to an appropriate group of line items on all non-SDB bids. The regulation explains:

> Offers will be evaluated so as to give a preference to offers submitted by SDB concerns. Each responsive offer, other than offers from SDB concerns, shall be adjusted for the purpose of price evaluation by adding a factor of 10 percent. The factor shall be applied on a line-item by line-item basis or to any group of line items on which award may be made as specifically provided by the solicitation.... Other evaluation factors (e.g., transportation ...) shall be applied to prices offered prior to application of the factor.

48 C.F.R. § 219.7001. Whichever method of calculation the contracting agency uses, the regulation specifically requires "[o]ffers ... [to] be evaluated so as to give a preference to offers submitted by SDB concerns." 48 C.F.R. § 219.7001.

Under this regulation, the contracting agency has two options for calculating the evaluation preference. First, the agency could apply the preference line-item by line-item. In other words, under this option, the agency must apply the preference factor to each line item on a non-SDB bid. This means the agency would add 10% to each non-SDB total bid price. Second, the agency could apply the preference only to those line items "on which award may be made." This option permits the agency to apply the preference to only those line items under consideration for the award decision. The RFP normally discloses what group of line items are the subject of an award decision.

■ Both Congress's statutory delegation of authority and the regulations demand that the agency apply a procedure which gives SDBs a meaningful preference. Thus, the fact that an RFP states that it will apply the evaluation preference in a certain way is not dispositive. The procedure must comport with the manifest intent of Congress as well as the language of the evaluation preference regulations.

### *Rationality of the GAO Decision*

■ Defendant contends that the GAO's prescribed application of the evaluation preference to only two line items was rational and reasonable. The GAO concluded that the decision in the Hudson Bay protest validated the Air Force's application of the evaluation preference to plaintiff. Hudson Bay Natural Gas Corp., B–237264, Feb. 5, 1990, 90–1 CPD ¶ ____. The Air Force now relies on the GAO decision.

Relying on the Hudson Bay reasoning, defendant contends that the Air Force may rationally apply the evaluation preference to competitive line items only. The SIP and WBI line items, to which the Air Force did not apply the preference, are identical for all bidders. According to defendant, the Air Force may reasonably refuse to apply the evaluation preference to line items which are identical for all bidders. Defendant therefore interprets the "on which award may be made" language of § 219.7001 to mean competitive factors only.

Plaintiff contends that the GAO recommendation is irrational. First, plaintiff asserts that the Hudson Bay protest is distinguishable. In the Hudson Bay contract, according to plaintiff, the Air Force properly applied the evaluation preference to all line items that were the basis of award. In plaintiff's contract, however, the Air Force applied the preference to two line items only, where four line items were in fact the basis of an award.

Second, plaintiff contends that the Air Force improperly interpreted Federal Acquisition Regulations. Specifically, the evaluation preference provisions state that the preference may be applied "to any group of line items on which award may be made as specifically provided by the solicitation." 48 C.F.R. § 219.7001. The RFP further stated that the Air Force would make its award on the basis of "the lowest total price." Def.Mot., App., at 15. Plaintiff contends that both cost and profit are elements of price. Yet, by applying the evaluation preference to the two adjustment factors only, the Air Force gave a preference for profit but not for cost.[3] Thus, plaintiff reasons, the Air Force did not apply the preference to all line items on which award would be made as required by the RFP.

After hearing extensive oral argument by both parties, this court concludes that the GAO did not follow the law and regulations governing SDB preferences. Therefore, the GAO decision was irrational. The Air Force could not reasonably rely on the GAO's finding. The GAO's finding that the Air Force properly could apply the evaluation preference only to the TAF and SAF line items was irrational. The Air Force cannot base its procurement decision on such an irrational and unreasonable conclusion by GAO.

This court reaches this conclusion because GAO did not follow the language of the law and regulations. The language of Public Law 99–661 (Pub.L.) and the regulations demand application of the 10% prefer-

ence to all four line items in the solicitation at issue.

Language of Pub.L. 99–661 and the Regulations

As previously discussed, Pub.L. 99–661 required the Air Force to meet a goal for minority contracting. Congress instructed the Secretary to use the utmost resourcefulness and diligence to facilitate minority participation. 100 Stat. at 3973. Congress even authorized the Secretary to impose anticompetitive measures to achieve minority participation. 100 Stat. at 3974.

The regulations accompanying Pub.L. 99–661 set forth the Secretary's means of achieving the goals set by law. Section 7001 specifically commands that "[o]ffers will be evaluated so as to give preference to offers submitted by SDB concerns." 48 C.F.R. § 219.7001. Specifically, the regulations promised to add a 10% factor to non-SDB bids "on a line-item by line-item basis or to any group of line items on which award may be made." 48 C.F.R. § 219.7001.

Applying the evaluation preference only to the two adjustment factor line items did not comply with the law or the regulations. The regulations permit the Air Force to apply the preference in either of two ways. If the Air Force had employed the line-item by line-item method, the parties would have no dispute. The Air Force would have then applied the preference to all four of line-items.

The Air Force contends, however, that the second method—applying the preference to only a relevant group of line-items—permits a different result. To the contrary, the second method demands the same result given the facts of this case. The RFP at issue explicitly states that award "will be made to the technically qualified, responsible Offeror whose proposal offers the *lowest total price* for all locations." Def.Mot., App., at 15 (emphasis added). Under Federal Acquisition

---

**3.** The TAF and SAF factors account primarily for profit margins. The Air Force applied the 10% preference to these factors. Thus, the Air Force accounted for the preference with respect to profit. The SIP and WBI factors account primarily for costs of supplying natural gas. The Air Force did not apply the preference to these cost items.

Regulations, price means "cost plus any fee or profit applicable to the contract type." 48 C.F.R. § 15.801 (1988).

As the parties agreed at oral argument, adjustment factor line items (TAF and SAF) are a bid on profit margin. The indexed line items (SIP and WBI) are the prevailing market rate, or the cost factors. Thus, the adjustment factors enable bidders to adjust the costs to account for their own profit margin. The RFP describes the adjustment factors in such terms. *See* Def.Mot., App. at 5.

The SAF and TAF account only for profit margin and perhaps a small slice of cost. To argue that the Air Force could award only based on the adjustment factors would contradict the meaning of "price" in the RFP as defined by federal regulations. Thus, "as specifically provided by the solicitation," the regulation required the Air Force to base its award on the SAF and TAF as well as the SIP and WBI.

Defendant cannot plausibly deny that the RFP envisioned all four line items as relevant to price and ultimate award. The RFP explicitly states: "Any offer which fails to cite a price for each item ... will be rejected as nonresponsive and nonconforming to this solicitation." Def.Mot., App., at 15.

In sum, because the RFP envisioned that "award ... be made" on the basis of all four line items, the Air Force had to apply the evaluation preference to all line items under § 219.7001. The GAO mechanically applied the Hudson Bay protest results to plaintiff without noting distinctions in the two cases. Thus, GAO's recommendation with respect to plaintiff did not follow the language of § 219.7001 which requires the Air Force to select "a group of line items on which award may be made *as specifically provided by the solicitation.*" 48 C.F.R. § 219.7001 (emphasis added). This error renders the GAO's decision irrational. Moreover, the Air Force's reliance on the GAO recommendation is erroneous.

For another reason as well, the Air Force's erroneous application of the regulation's second method violates the language and intent of the regulation. Although the Air Force contends that the regulation's first and second methods demand different results, the regulation does not support that reading. Rather, the regulation states:

> Offers will be evaluated so as to give a preference to offers submitted by SDB concerns.

48 C.F.R. § 219.7001. An examination of this bid shows that the Air Force's proposed bid procedure actually denied plaintiff any meaningful or rationally based preference. In fact, the preference acted as a disadvantage under the Air Force's irrational procedure.

Well established businesses with a large volume, an efficient operation, and an ability to shift costs, can make a profit without deviation from prevailing market rates. As a consequence, established businesses can bid without increasing their profit margin through adjustment factors. In fact, as the best and final offers data indicates, several bidders on plaintiff's RFP submitted bids equal to the market rate by supplying adjustment factors at or below zero. Defendant's Reply, filed April 12, 1990 (Def.Rep.), Appendix (App.), at 45–48. Thus, applying the evaluation preference to adjustment factor line items alone disadvantages SDBs in comparison to the very types of well-established businesses over which Congress intended to give SDBs an edge.

This disadvantage is quite graphic in the present case. The Air Force did not add 10% to four of the five non-SDB bidder's TAF line item because each bid zero for that adjustment factor. Further, the Air Force did not add the 10% preference to three of the five non-SDB bidders' SAF line items because each bid zero for that adjustment factor.

The disparate result in this case is not the "luck of the draw" as defendant would have this court believe. Rather, the GAO's recommended application of the evaluation preference inherently causes sharply inconsistent and irreconcilable results. Take, for example, a solicitation involving one SDB and three non-SDB concerns. Non–SDB "A" bids + $1.00 as its SAF. In

other words, "A" must bid $1.00 above the market rate to obtain its desired profit margin. Non–SDB "B" bids $0.00 as its SAF. Thus, "B" can stay at the market rate and receive its desired yield. Non–SDB "C" bids − $1.00 as its SAF. This means that "C" can make its desired yield even by selling below market rate.

If the Air Force applied the 10% preference to these three hypothetical non-SDB bidders, "A" would have an SAF of $1.10, "B" would have an SAF of zero, and "C" would have an SAF of − $.90. Thus, the hypothetical SDB would get a preference as to "A" and "C," but not as to "B." "B" is a more competitively aggressive bidder than "A," yet the SDB gets a preference in competition with "A," but not in competition with "B." This result is not rational.

Moreover, this irrational result is not consistent with the statutory and regulatory preference scheme. As discussed above, Congress directed the Air Force to meet a goal. The regulations profess to promise a preference. Yet, as applied in this instance, the regulations actually deny SDBs a preference with respect to well-established businesses which can afford to bid 00.00$ on some or both adjustment factors. As illustrated above, plaintiff encountered precisely this irrational scenario. Several bidders bid $0.00 in each adjustment factor category.

In sum, then, the GAO decision is irrational and the Air Force could not reasonably rely on GAO's recommendation regarding the application of the evaluation preference.[4] The method employed by the Air Force did not obey the language of the regulations. Further, the method arbitrarily gives preferences in relation to some bidders and not others without regard to their competitive nature. Such an application of the 10% evaluation preference not only violates the scheme envisioned by Congress, but is not based on any comprehensible rationale.

### Remedies

■ Plaintiff asked this court for an order "requiring ... Defendant to comply with the applicable federal acquisition regulations...." Complaint, filed April 5, 1990, at 15. Plaintiff also asked for an order requiring "a *nunc pro tunc* selection of the successful offeror applying the evaluation preference to the total price of the best and final offers previously submitted." Complaint, at 15.

This court is sensitive to the deferential role that courts must play when dealing with agency action. Because of agencies' unique expertise in specialized areas, courts should tread lightly in areas of administrative policy and enforcement. Similarly, absent unreasonableness, irrationality, derogation of applicable law, agency interpretation of regulations is subject to the utmost respect and deference. Policymaking and enforcement are areas for political actors in the legislative and executive branches, not for courts.

This court invalidates the Air Force's application of the preference because it relied on an irrational GAO decision which lacked basis in law. This action is within the jurisdiction of this court.

While this court may invalidate irrational agency action, it may not direct any agency to adopt a particular policy judgment. In response to this court's decision, the Air Force has full discretion to issue a new RFP with fewer line items that are the

---

4. Defendant contends that the evaluation preference should apply only to competitive factors. Consequently, defendant argues that the preference should apply to the SAF and TAF line items because the index price line items are identical for every bidder and set according to market quotations.

Plaintiff, however, could argue effectively that the statute specifically permitted the Air Force to set aside normal competitive formulas to achieve SDB preferences. Congress openly directed the Secretary of Defense "when necessary ... to ... enter into contracts using less than full and open competitive procedures...." 100 Stat. at 3974. The Secretary must use his "utmost authority" to effectuate Congress's minority contracting goals. 100 Stat. at 3973. Similarly, the regulation promised application of the preference to all offers. 48 C.F.R. § 219.7001. The Air Force's process denied plaintiff, in application, any preference.

subject of award,[5] to reselect from existing bidders after applying the evaluation preference in accordance with this opinion, or to otherwise proceed in accordance with its authority. The Air Force is most familiar with the facts of this solicitation and is in the best position to make a sound judgment. Thus, this court merely rules that under the RFP presently at issue, the Air Force must apply the evaluation preference to all line items on which award will be made.

## CONCLUSION

The GAO's recommendation that the Air Force could apply the 10% evaluation preference to two line items only was irrational and had no basis in law. The Air Force could not properly rely on this recommendation. Thus, this court concludes that the Air Force cannot award a contract for RFP No. F39601–89–R0016 under the evaluation preference as applied. The Air Force must apply the preference as to all line items on which award may be made.

This court grants plaintiff's cross-motion for summary judgment and denies defendant's motion. This court also denies as moot plaintiff's request for a temporary restraining order, filed, April 6, 1990. This court further directs the Clerk of the court to enter judgment prohibiting the Air Force from awarding the contract at issue under the evaluation preference procedure as employed.

No costs.

---

**5.** Plaintiff's counsel repeatedly asserted its acceptance of the Hudson Bay protest results. Moreover, plaintiff's counsel agreed to bid without protesting if the Air Force issued a new RFP with only two line items as the Hudson Bay RFP contained.