HONEYWELL, INC., Plaintiff–Appellee,

v.

The UNITED STATES,
Defendant–Appellant,

v.

HAZ–TAD, INC., Defendant–Appellant.

Nos. 89–1155, 88–1204.

United States Court of Appeals,
Federal Circuit.

April 5, 1989.

---

Paul C. Fuener, Pettit & Martin, Washington, D.C., argued for plaintiff-appellee. With him on the brief were Gregory A. Smith and Gail D. Frulla.

Paula Barton, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for defendant-appellant U.S. With her on the brief were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Also on the brief was Major David Carey, Judge Advocate General's Office, Dept. of the Army. Melvin Rishe, P.C., Fried, Frank, Harris, Shriver & Jacobson, Washington, D.C., argued for defendant-appellant Haz–Tad, Inc. With him on the brief were Garry S. Grossman and Richard D. Lieberman.

Before FRIEDMAN, BISSELL and ARCHER, Circuit Judges.

FRIEDMAN, Circuit Judge.

These are appeals from an order of the United States Claims Court permanently enjoining the Department of the Army (Army) from awarding a contract to the appellant Haz–Tad, Inc. (Haz–Tad). *Honeywell, Inc. v. United States*, 16 Cl.Ct. 173 (1989). The contracting officer had held that Haz–Tad's bid was not responsive, but the General Accounting Office (GAO) ruled to the contrary and recommended that the Army award the contract to Haz–Tad. When the Army stated it would follow that recommendation, Honeywell, Inc. (Honeywell), the second lowest bidder on the contract, filed suit to enjoin the award. The Claims Court held that the GAO had not had a rational basis for its recommendation, and enjoined the award. We reverse.

I

A. The Army issued a solicitation for technical proposals for the manufacture and delivery of communication equipment as the first step of a two-step sealed bid procurement, pursuant to 48 C.F.R. §§ 14.-501—14.503.2. Six bidders submitted technical proposals, five of which the Army determined to be technically acceptable. The Army then issued invitations to these five bidders to submit bids. At the bid opening, Haz–Tad submitted the lowest bid, and the appellee Honeywell submitted the second lowest bid.

In its technical proposal, Haz–Tad (1) identified itself as a New York corporation, (2) designated Haz–Tad's president as the party authorized to negotiate with the government on Haz–Tad's behalf, (3) described Haz–Tad, Inc., as a joint venture corporation that was formed by two companies, Hazeltine Corporation, a Delaware corporation, and Tadiran, Ltd., an Israeli corporation, and (4) stated that Haz–Tad, Inc., would be the prime contractor and would award subcontracts to the joint venture partners. The technical proposal also included a 12–page "Description Of Joint Venture," which stated that (1) Hazeltine and Tadiran have agreed to form a joint venture, (2) "[t]he name of the joint venture is 'Haz–Tad, Inc.,'" (3) the contract award will be taken in the name of and on the basis of the joint venture, and (4) the contract will be "signed in the name of the joint venture by authorized signatories of both companies, which will be deemed as acknowledgement and acceptance by them of their responsibilities for the terms and conditions of the contract."

In a letter accompanying the technical proposal, Haz–Tad's president stated:

The enclosed proposal, submitted by Haz–Tad, Inc., is fully compliant with the requirement of the U.S. Army CECOM Solicitation Number DAAB07–87–R–J042.

Hazeltine and Tadiran have executed a pre-incorporation and shareholders agreement and have subsequently formed a corporation pursuant thereto called Haz–Tad, Inc. This corporation has been carefully structured to meet the security requirements necessary to maintain critical control of all classified information under the contract and to receive the necessary U.S. Government security clearances.

. . . .

The Corporation will be the prime contractor and will award subcontracts to Hazeltine ... and Tadiran.

. . . .

Please note that because of their major roles Tadiran Electronic Industries, Inc. and Hazeltine Corporation, are signing this proposal in their individual capacities. These signatures in the individual capacities represent each company's guarantee running to Haz–Tad, Inc. and the United States Government to perform their portion of the effort to be subcontracted by the Corporation to them and a secondary guarantee by Hazeltine to the United States Government for Tadiran's performance of its subcontracted efforts.

In its step two bid, Haz–Tad certified as the bidder that it was a New York corporation, and identified Hazeltine as its parent company. The bid was signed by Haz–Tad's president. Hazeltine and Tadiran did not sign the bid as subcontractors.

B. After the bids were opened, Honeywell filed a protest with the contracting officer alleging that Haz–Tad's bid was nonresponsive because Haz–Tad did not qualify as a regular dealer or manufacturer, as the Walsh–Healey Public Contracts Act, 41 U.S.C. §§ 35–45 (1987), required.

In their response to the protest, Haz–Tad, Hazeltine, and Tadiran argued that the bid was submitted on behalf of a joint venture, consisting of Hazeltine, Tadiran, and Haz–Tad, which possessed sufficient manufacturing capability to qualify as a manufacturer under the Walsh–Healey Act.

The contracting officer rejected the bid, finding it nonresponsive because "it is unclear whether the legal entity which submitted the offer and bid was HAZ–TAD, Inc., acting solely as a separate entity, or as part of a joint venture with Tadiran, Ltd. and Hazeltine, Inc."

C. Haz–Tad, Hazeltine, and Tadiran filed a protest with the GAO requesting that the GAO determine that the Haz–Tad bid was responsive. The GAO so ruled. *Haz–Tad, Inc.*, B–232025, 88–2 CPD ¶ 486

(Nov. 17, 1988). It found that, "based upon the bid as submitted, the identity of the bidder was established as Haz–Tad, Inc., a corporation owned and controlled by Hazeltine and Tadiran," and that Haz–Tad's bid was responsive. The GAO explained its rejection of the contrary decision of the contracting officer as follows:

The agency, in rejecting Haz–Tad, Inc.'s bid, apparently was persuaded by post-bid opening submissions by counsel for the protesters in which it was claimed that the bid was submitted by Hazeltine, Tadiran, and Haz–Tad, Inc. as a joint venture. Much of these submissions by the protesters to the contracting officer relied on evidence outside the bid.

. . . .

We think that the bid documents (step one and step two) establish the identity of the bidder as Haz–Tad, Inc., the corporation, which was formed as a result of a joint venture between Hazeltine and Tadiran for the purpose of bidding on this solicitation. We also think that the contracting officer should not have relied upon post-bid opening explanations to reject the bid as nonresponsive since the bidder's identity was clear on the face of the bid documents.... [T]he technical proposal described a joint venture between Hazeltine and Tadiran, with the corporation Haz–Tad, Inc., created as a vehicle to implement the agreement between the two corporations. Neither the step one proposal nor the step two bid contained evidence that the protester had entered into an agreement with Hazeltine and Tadiran to be part of a joint venture.

The GAO recommended that the Army forward the record to the Department of Labor for a determination of Haz–Tad's status as a manufacturer, and that "[i]f that determination is affirmative, and if otherwise appropriate, the contract should be awarded to Haz–Tad, Inc."

The Army subsequently notified the parties that it intended to follow the recommendation of the GAO and to award the contract to Haz–Tad.

D. Honeywell immediately filed in the Claims Court a complaint seeking to enjoin the Army from awarding the contract to Haz–Tad. The Claims Court held that the Army improperly had followed the GAO recommendation and permanently enjoined the Army from awarding the contract to Haz–Tad or to "any combination of" Haz–Tad, Hazeltine, and Tadiran.

The Claims Court began its analysis by noting that "[t]he recommendation of the GAO, which the Army has adopted, may not be overturned unless no rational basis for this determination exists." The court then ruled that

> [t]he GAO recommendation, finding that the term "joint venture" was used simply as an explanative word to describe the corporation created through the joint venture of Hazeltine and Tadiran is over-simplistic and ignores the plain language of the bid. The GAO overlooked the crucial differences between a corporation and a joint venture. The intent of Hazeltine and Tadiran to enter into a joint venture is clearly reflected in the proposal.

Upon its review of the bid documents, the court held that "[a]mbiguity as to the offeror's identity persists throughout the bid.... [in that] [t]he bid's use of terminology, the meaning of the language and the manner in which the forms were filled out, taken as a whole, can't be read as clearly indicating that the bidder is Haz–Tad, the corporation, Haz–Tad the joint venture, or the joint venture of Haz–Tad, Hazeltine and Tadiran." The court concluded:

> The GAO recommendation ignored the blatantly ambiguous wording of the bid, as well as its underlying meaning. There is no rational basis upon which such a determination can be based. Furthermore, considering the importance of classifying the bidder as a corporation or a joint venture, and the magnitude of the bid, it is unrealistic that such a crucial difference was overlooked.

The court further stated that

> [g]enerally recommendations of the GAO are accorded "due weight and deference by this court given the GAO's long expe-

rience and special expertise in ... bid protest matters." However, the case at bar involves the interpretation of bid documents to determine the identity of the bidder. The GAO has no greater specialty in this area than the Claims Court and its predecessor. Decisions of the GAO are merely "recommendations," 31 U.S.C. § 3554 (1982), and not binding on this court. Consequently, this court is not bound by the GAO recommendation. [Citation omitted.]

## II

■ The question before the Claims Court was whether the Army justifiably followed the GAO's recommendation that the bid identified Haz–Tad as the bidder and therefore was responsive to the solicitation. The Claims Court recognized that the controlling inquiry in deciding that question was whether the GAO's decision was a rational one. After paying lip service to that standard, however, the Claims Court impermissibly undertook what can fairly be characterized only as its own independent *de novo* determination of whether the bid documents identified Haz–Tad as the bidder. Based upon its own weighing and evaluation of those materials, the Claims Court concluded that the GAO had "ignored the blatantly ambiguous wording of the bid, as well as its underlying meaning."

Contrary to the view of the Claims Court, we conclude that the GAO decision was rational and that the Army did not act arbitrarily or capriciously in following the GAO's recommendation that the bid should be deemed responsive because it identified Haz–Tad as the bidder.

A. The GAO plays an important role in the resolution of contested procurement decisions. *See M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1304–06 (D.C.Cir. 1971); *Wheelabrator Corp. v. Chafee*, 455 F.2d 1306, 1314–15 (D.C.Cir.1971). Agenices traditionally have deferred to GAO recommendations, and as a general policy have acceded to the views of the GAO even when those views conflicted with the agency's original position. The Court of Claims

recognized in *John Reiner & Co. v. United States*, 325 F.2d 438, 163 Ct.Cl. 381 (1963), *cert. denied*, 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964), an action for damages based upon the Army's cancellation of a contract following a GAO ruling that the award of the contract to the plaintiff was improper, that

> it is the usual policy, if not the obligation, of the procuring departments to accommodate themselves to positions formally taken by the General Accounting Office with respect to competitive bidding. That Office, as we have pointed out, has special concern with, and supervision over, that aspect of procurement. It would be entirely justifiable for the contracting officer to follow the general policy of acceding to the views of the Accounting Office in this area even though he had another position on the particular issue of legality or propriety.

325 F.2d at 442.

In the 1984 Competition in Contracting Act, 31 U.S.C. §§ 3551–3556 (Supp. IV 1986), Congress recognized and strengthened the GAO's involvement in the procurement process. This statute "codifies and strengthens the bid protest function currently in operation at the General Accounting Office (GAO)." H.R. Conf.Rep. No. 861, 98th Cong., 2d Sess. 1435, *reprinted in* 1984 U.S.Code Cong. & Admin.News 697, 1445, 2123. The Act authorizes the Comptroller General to entertain protests by disappointed bidders. Action on the procurement is stayed during the GAO proceeding. 31 U.S.C. § 3553(c)(1), (d)(1). The Comptroller General is empowered to determine whether the solicitation, proposed award, or award complies with statute and regulation, 31 U.S.C. § 3554(b)(1).

If the Comptroller General determines that it does not so comply, he shall recommend that the agency take specific corrective action, including "award[ing] a contract consistent with the requirements of such statute and regulations." 31 U.S.C. § 3554(b)(1)(E). The head of the procuring agency must report to the Comptroller General if the agency has not fully implemented the Comptroller General's recommendations within 60 days, 31 U.S.C. § 3554(e)(1), and the Comptroller General must report annually to Congress each instance of agency noncompliance. 31 U.S.C. § 3554(e)(2). The Act further provides that in a subsequent judicial action relating to the procurement, the Comptroller General's recommendation and the agency's report of its noncompliance "shall be considered to be part of the agency record subject to review." 31 U.S.C. § 3556.

Although "[t]hese provisions do not compel procuring agencies to obey the recommendation of the Comptroller General," their effect "is to compel procurement officials to make purchase decisions in light of what the Comptroller General recommends the government do in that case." *Ameron v. United States Army Corps of Eng'rs*, 809 F.2d 979, 986 (3d Cir.1986).

These provisions show that Congress contemplated and intended that procurement agencies normally would follow the Comptroller General's recommendation. Congress viewed an agency's failure to do so as sufficiently unusual as to require the agency to report such noncompliance to the Comptroller General and to require the latter annually to inform Congress of any instances of noncompliance. In these circumstances, a procurement agency's decision to follow the Comptroller General's recommendation, even though that recommendation differed from the contracting officer's initial decision, was proper unless the Comptroller General's decision itself was irrational. "If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations." *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C.Cir.1971).

B. Far from being irrational, the Comptroller General's decision that Haz–Tad and not the joint venture was the bidder had ample support in the bid documents.

"Responsiveness is determined by reference to the bids when they are opened," *Toyo Menka Kaisha, Ltd. v. United*

*States,* 597 F.2d 1371, 1377, 220 Ct.Cl. 210 (1979), and it was upon this basis that the GAO considered the responsiveness of Haz–Tad's bid. The GAO's finding that "based upon the bids as submitted, the identity of the bidder was established as Haz–Tad, Inc., a corporation owned and controlled by Hazeltine and Tadiran," was supported by numerous statements in the bid documents.

As the Comptroller General described in his decision and as set forth in part I–A of this opinion, both the technical proposal and the second-step bid repeatedly identified Haz–Tad as the bidder. The bid was submitted by Haz–Tad and signed by Haz–Tad's president. The bid documents explained that Hazeltine and Tadiran had formed a joint venture and created Haz–Tad as the entity that would bid upon and enter into the contract and perform it. The GAO was fully warranted in concluding that "the bid documents (step one and step two) establish the identity of the bidder as Haz–Tad, Inc., the corporation, which was formed as a result of a joint venture between Hazeltine and Tadiran for the purpose of bidding on this solicitation."

In rejecting the GAO's decision and holding that the bid was ambiguous with respect to the identity of the bidder, the Claims Court gave considerable weight to the references in the technical proposal to a joint venture. The court, however, failed to give appropriate deference to the GAO's conclusion that "[n]either the step one proposal nor the step two bid contained evidence that the protester [Haz–Tad] had entered into an agreement with Hazeltine and Tadiran to be part of a joint venture," a conclusion that we cannot say was not rational. Although the court correctly noted that it "is not bound by the GAO recommendation," that fact is irrelevant in determining whether the GAO's interpretation of the bid documents as identifying Haz–Tad as the bidder was a rational one.

## III

 Honeywell urges that even if we should reverse the Claims Court decision that the bid failed to identify Haz–Tad as the bidder and therefore was unresponsive, we should nevertheless affirm the Claims Court judgment on the alternative ground that Haz–Tad did not qualify as a "manufacturer" under the Walsh–Healey Act. The latter issue, however, involves not the responsiveness of the bid but the responsibility of the bidder and is to be determined only after the responsiveness of the bid has been determined. *See Antenna Products Corp.,* B–227116.2, 88–1 CPD ¶ 297 (Mar. 23, 1988). We agree with the Claims Court which, in declining to consider that question, stated that "[s]ince the Army has not made a final determination as to whether Haz–Tad meets the Walsh–Healey requirements, a decision by this court on that issue would be premature."

## CONCLUSION

The order of the Claims Court enjoining the Army from awarding the contract to Haz–Tad, Inc., is

REVERSED.