**Josephine E. KINNE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 538–89 C.

United States Claims Court.

July 19, 1990.

Josephine E. Kinne, Ridgecrest, Cal., pro se.

Agnes M. Brown, Washington, D.C., with whom was Stuart M. Gerson, Asst. Atty. Gen., for defendant.

## OPINION

RADER, Judge.

Plaintiff, Josephine Kinne, is the widow of Loren H. Kinne, a former Commander in the United States Navy. While enlisted in the Navy, plaintiff's husband participated in the Survivor Benefit Plan (SBP or the Plan). 10 U.S.C. §§ 1447–1451 (1988). Thus, plaintiff receives monthly annuity payments from SBP.

As required by law, the Navy currently offsets monthly SBP payments by the amount of plaintiff's social security benefits. In this lawsuit, plaintiff argues that the Navy's offset formula violates congressional intent and causes a miscarriage of justice. Defendant contends, however, that the calculation is consistent with the law.

Defendant moved to dismiss this action under RUSCC 12(b)(4) for failure to state a claim. In the alternative, defendant moved for summary judgment. Plaintiff cross moved for summary judgment. After oral argument, this court denies defendant's motion to dismiss, but grants defendant's motion for summary judgment. This court denies plaintiff's cross motion.

## FACTS

### The Survivor Benefit Plan: Creation and Operation

SBP secures a monthly annuity for surviving dependents of military retirees. SBP members select a level of coverage or base amount. Based on this election, the

Plan's administrators make deductions from the members' monthly retired pay. Upon a retiree's death, survivors receive up to 55% of the retiree's total monthly retired pay. 10 U.S.C. §§ 1447(2)(A), 1448(a)(2)(A), 1451(a)(1)(A), 1451(e)(2)(A) (1988). Thus, military retirees can secure a monthly annuity for their surviving dependents in exchange for a portion of their retired pay.

SBP works in conjunction with the social security system. The Navy reduces SBP benefits when surviving dependents begin to receive social security benefits.[1] Specifically, once a survivor reaches age 62, the Navy must reduce an SBP annuity by "the amount of the survivor benefit, if any, to which the widow or widower would be entitled under title II of the Social Security Act (42 U.S.C. § 401 *et seq.*) based solely upon service by the person concerned." 10 U.S.C. § 1451(e)(3). SBP's primary goal was to fill the gap between the death of a military retiree and the time the decedent's survivors become eligible for social security at age 62.

The President of the United States must prescribe regulations implementing the SBP. 10 U.S.C. § 1455. The Department of Defense (DOD) issued Directive 1332.27, which describes calculation of the social security offset. The directive states:

> The social security payments based solely upon the retiree's active military service will be calculated using the same basic procedure used by the Social Security Administration but will be based on an assumed earnings pattern. For the purpose of this calculation, the member is assumed to live to age 65 and to have worked in social security covered employment only while on active duty.

DOD Directive 1332.27 § 401a.(1) (1974).[2]

This calculation bases the offset solely on social security benefits a survivor receives for the decedent's active military service. This calculation does not account for the widow's or widower's benefit attributable to social security payments after the retiree's military career. Thus, if a military retiree contributed substantially to social security after leaving the armed forces, these post-military contributions are not part of the offset calculation.

On June 8, 1973, the Acting Assistant Secretary of Defense (Assistant Secretary) asked the Comptroller General to reconsider the SBP offset formula. The Assistant Secretary suggested an alternative formula. This alternative first computes the decedent's lifetime earnings from both military and civilian employment. The formula then prorates the two to determine the amount of social security benefits attributable to military service. Under this formula, the SBP offset is directly proportional to the social security benefits that a retiree or his dependent would receive on post–1956 military earnings.[3]

---

**1.** The House Armed Services Committee explained this requirement:

> Congress' goal in creating the Survivor Benefit Plan was to ensure that survivors of military retirees would be provided reasonable and continuous income replacement—something that social security alone does not provide because of the gaps in years of coverage until the widow or widower reaches age 62.

H.R.REP. NO. 81, 99th Cong., 1st Sess. 250–51, *reprinted in* 1985 U.S.CODE CONG. & ADMIN. NEWS 472, 527.

The House Armed Services Committee further commented on the rationale for the offset:

> To not in some way offset the payment of one program against the payment from the other would undervalue the substantial contributions made by the government, provide more than the intended level of benefits to some recipients, and increase program costs significantly. The added costs would have to be made up by either greater subsidy from the taxpayers or higher contributions by the re-

> tiree. Social Security integration is a common feature of private sector retirement and survivor plans for similar reasons.

1985 U.S.CODE CONG. & ADMIN.NEWS, at 527.

**2.** For the computation method, see Comptroller General Decision B–178884, 53 Comp.Gen. 733, 734 (1974).

**3.** This alternative method is substantially the same as plaintiff's proposed formula. In contrast to the present formula which considers only military earnings, Kinne's alternative provides a smaller offset. Commander Kinne had substantial social security-covered earnings during his post-military civilian employment. The percentage of social security benefits attributable to military service naturally shrinks as the amount of benefits attributable to other income increases. As a consequence, the alternative formula reduces the amount of benefits attributable to military service by considering the higher withholdings borne after service.

The Comptroller General rejected this alternative method. He found that DOD Directive 1332.27 properly reflected congressional intent. Specifically, Congress intended the armed forces to calculate the offset without considering the decedent's post-retirement earnings.

Congress amended the SBP in 1985, replacing the social security offset with a two-tier system of benefits. Under the new system, the Navy would have offset plaintiff's SBP annuity by a larger amount. However, the amendment "grandfathered" survivors who received SBP payments as of October 1, 1985. Plaintiff's offsets therefore remained the same. In March 1987, DOD issued its Retired Pay Manual, which sets forth the present SBP formula.

### Claims Court Action

Plaintiff's husband enlisted in the Navy in 1939. On January 1, 1957, all military members became participants in the social security system. On December 1, 1969, Commander Kinne retired from active service. Commander Kinne had substantial civilian earnings after retirement.

In 1972, Commander Kinne elected to participate in SBP. He died ten years later on April 22, 1982. Plaintiff, then age sixty, immediately received monthly SBP payments. On June 24, 1984, plaintiff turned sixty-two. The Navy consequently reduced plaintiff's SBP annuity by the amount of social security benefits she receives because of her husband's military service. The Navy continues to apply this offset to plaintiff's monthly payments.

Plaintiff instituted this action in the United States Claims Court on October 3, 1989. Plaintiff argues that DOD's offset formula contravenes congressional intent and violates equal justice. She contests reduction of her SBP annuity by more than the amount of social security benefits attributable to her husband's military service. Plaintiff proposes a formula substantially similar to the alternative rejected by the Comptroller General. Under this proposal, plaintiff's annuity would be subject to a smaller offset. Specifically, plaintiff seeks a $75.00 reduction of her monthly offset.

Plaintiff also seeks $4,500.00 as a retroactive adjustment for previous offsets.

### DISCUSSION

Defendant erects two hurdles that plaintiff must clear to recover in this case. First, defendant has moved to dismiss under RUSCC 12(b)(4). Second, defendant has moved for summary judgment under RUSCC 56. Plaintiff successfully clears the first hurdle, but not the second.

### Failure to State a Claim

RUSCC 12(b)(4) authorizes this court to dismiss a complaint for failure to state a claim. This court's review, however, has distinct limits:

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Dismissing a complaint for failure to state a claim is severe. Plaintiff never receives an opportunity to offer evidence to prove its claim. *See, e.g., United States v. City of Redwood City*, 640 F.2d 963 (9th Cir.1981); *De La Cruz v. Tormey*, 582 F.2d 45 (9th Cir.1978), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979). Consequently, this court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* 416 U.S. at 236, 94 S.Ct. at 1686 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). Further, this court must accept all factual allegations of the complaint and draw all reasonable inferences in favor of plaintiff. *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686. This court also construes the allegations of the complaint liberally, especially because the complaint is *pro se*. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976).

■ Under this high standard, plaintiff in this case should receive the opportunity to show whether DOD properly implemented the SBP law. Plaintiff challenges the validity of the present SBP formula. Plaintiff contends that the present formula is manifestly at odds with Congress's intent. Plaintiff argues that the present formula deprives her of annuity benefits that otherwise would be available. If plaintiff is correct, then the Government would have to compensate her for the difference between the annuity under the invalid formula and the annuity under a valid alternative formula. Such a money judgment is peculiarly within this court's Tucker Act jurisdiction.[4]

Defendant contends that plaintiff's understanding of Congress's intent is wrong. This argument does not mean that plaintiff's complaint fails to state a compensable claim. Rather, defendant merely contends that it is entitled to judgment as a matter of law. Thus, construing the complaint liberally and drawing all reasonable inferences in favor of plaintiff, Mrs. Kinne's claim is one for which this court may grant relief.

### Summary Judgment

■ In the absence of genuine issues of material fact, RUSCC 56 authorizes this court to resolve cases as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327,

106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986); *D.L. Auld Co. v. Chroma Graphics Corp.*, 714 F.2d 1144 (Fed.Cir.1983). Both parties admit that there are no disputed factual issues. This court agrees that summary judgment is appropriate and therefore grants summary judgment as a matter of law.

### Interpreting The Survivor Benefit Plan

The SBP law requires a social security offset to plaintiff's monthly annuity. 10 U.S.C. § 1451(d)(1). Section 1451(e)(3) explains how to calculate this offset:

> An annuity computed under this subsection shall be reduced by the lesser of—
>
> (A) the amount of the survivor benefit, if any, to which the widow or widower or former spouse would be entitled under ... the Social Security Act ... *based solely upon service by the person concerned as described in* ... [the Social Security] *Act* ... and calculated assuming that the person concerned lives to age 65; or
>
> (B) 40 percent of the amount of the monthly annuity as determined under paragraph (2).

10 U.S.C. § 1451(e)(3) (emphasis added).[5] Because the Social Security Act deals with persons who served in the armed forces after December 1956, "service by the per-

---

**4.** This court granted the Government's RUSCC 12(b)(4) motion in *Gould, Inc. v. United States*, 19 Cl.Ct. 257 (1990), because of facts which are not present in this case. Most notably, unlike here, plaintiff in *Gould* was not entitled to a monetary judgment for violation of the multi-year procurement statute. Plaintiff was not the intended beneficiary of the statutory scheme.

**5.** Section 1451(e)(3) applies in this case in view of the language of 10 U.S.C. § 1451:

> (d)(1) The annuity of a person whose annuity is computed under clause (A) of subsection (a)(1), (a)(2), or (c)(1) shall be reduced on the first day of the month after the month in which the person becomes 62 years of age.
>
> ....
>
> (2)(B) In the case of a person eligible to have the annuity computed under subsection (e) and for whom, at the time the person becomes 62 years of age, an annuity computed with a reduction under subsection (e)(3) is more favorable than an annuity with a reduction described in subparagraph (A), the reduc-

tion in the annuity shall be computed in the same manner as a reduction under subsection (e)(3).

> (e)(1) The following beneficiaries under the Plan are eligible to have an annuity under the Plan computed under this subsection:
>
> (A) A beneficiary receiving an annuity under the Plan on October 1, 1985, as the widow, widower, or former spouse, of the person providing the annuity.

Section 1451(d)(2)(B) guarantees that an SBP beneficiary eligible to have his annuity computed under subsection (e) shall be entitled to the more favorable amount under either the old or the new Social Security offset system. It is more favorable to plaintiff to have the annuity reduction computed ·under subsection (e)(3) (old system) than under subparagraph (A) (new system). The new system would require a larger offset. Subsection (e)(3) therefore is the proper section to consult.

son" necessarily refers to post–1956 active duty. *See* 42 U.S.C. § 410 (1988).

■ In plaintiff's case, the offset is less under subsection (A) than under subsection (B). Subsection (A) therefore governs plaintiff's offset. Consequently, the offset must be based solely on Commander Kinne's post–1956 military service. Further, the offset must be calculated under the assumption that Commander Kinne lived to age 65. The language of the statute directs that the offset be "based solely upon service by the person concerned." 10 U.S.C. § 1451(e)(3). The language of the statute unambiguously requires the Navy to consider only social security earnings attributable to military service.

The legislative history explains this law. The Senate Armed Services Committee Report to the 1972 SBP legislation states:

Social security payments considered in determining the amount of the offset from the annuity are calculated using two assumptions:

(1) That the member lived until age 65.

(2) That the member's only social security covered wages were those received from a uniformed service.

The House of Representatives recognizing that other definitions could be employed, found that this definition, alone, (1) would assure that military annuities would not be reduced because of social security earned outside of government service, and (2) would further assure that a widow will receive at least 55 percent of retired pay. It also avoids complicated administrative problems.

S.REP. NO. 1089, 92d Cong., 2d Sess. 30–31, *reprinted in* 1972 U.S.CODE CONG. & ADMIN.NEWS 3288, 3316. The Senate Armed Services Committee further explained:

In other words, when the widow reaches age 62, her annuity based on her husband's military retired pay would be off-

set by the equivalent of the social security payment which is *attributable to her husband's military service....* [This] assumes that the military retiree had no employment covered by social security subsequent to military service and that he lived to age 65.

*Id.* at 3305 (emphasis in original). *See also,* H.R.REP. NO. 481, 92d Cong., 1st Sess. 15 (1971) ("It cannot be overemphasized that the only social security payments which are taken into account in this integration of benefits are the payments to the widow *based on her husband's social security earned while he was on active duty in military service*") (emphasis in original).

In sum, then, the Navy must consider only the social security benefits based on decedent's military service when computing the SBP offset. The Navy followed this statutory command.

Shortly after enactment of the SBP, DOD issued Directive 1332.27 pursuant to 10 U.S.C. § 1455. Directive 1332.27 describes the SBP offset formula:

The social security payments based solely upon the retiree's active military service will be calculated using the same basic procedure used by the Social Security Administration but will be based on an assumed earnings pattern. For the purpose of this calculation, the member is assumed to live to age 65 and to have worked in social security covered employment only while on active duty.

DOD Directive 1332.27 § 401(a)(1) (1974).[6] Thus, DOD's method relies exclusively on military earnings after December 1956.

DOD's method takes the aggregate amount of military earnings under social security and computes average monthly earnings based only on these military earnings. The formula then applies the methodology used by the Social Security Administration to determine the Primary Insur-

---

6. The DOD Retired Pay Manual similarly prescribes the method for calculating a social security offset to SBP. The Retired Pay Manual states:

Offset to SBP Annuity Because of Social Security Benefits. The offset is based on the

member's active military service after 31 Dec. 1956.

Department of Defense Military Retired Pay Manual No. 1340.12–M, issued Mar. 9, 1987 (Manual), at 9–42.

ance Amount. DOD assumes that the member lived to age 65. Manual, Appendix 19, B19–1–B19–11. This formula follows the plain language of § 1451(e)(3).

In support of its motion for summary judgment, defendant contends that plaintiff's interpretation of the SBP offset formula already has been rejected by the Comptroller General. Citing *Honeywell v. United States*, 870 F.2d 644 (Fed.Cir.1989), defendant has suggested that this court should follow the Comptroller General's determination.

 This court, however, must interpret the law without deferring to other governmental officers. The Constitution and laws of the United States charge the courts with the responsibility to discern the meaning of the law. In the oft-quoted words of Chief Justice John Marshall, "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). Occasionally courts defer to the fact-finding expertise of administrative adjudicators. *See, e.g., Crowell v. Benson*, 285 U.S. 22, 47–51, 52 S.Ct. 285, 291–93, 76 L.Ed. 598 (1932). Congress and the courts may not, however, abrogate the judicial branch's responsibility to interpret the law. The Supreme Court observed:

Reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate a congressional policy underlying a statute. Such review is always properly within the judicial province, and courts would abdicate their responsibility if they did not fully review such administrative decisions.

*NLRB v. Brown*, 380 U.S. 278, 291–92, 85 S.Ct. 980, 988–89, 13 L.Ed.2d 839 (1965). *See also, Bowsher v. Synar*, 478 U.S. 714, 733, 106 S.Ct. 3181, 3191, 92 L.Ed.2d 583 (1986) ("Once Congress makes its choice in enacting legislation, its participation ends.").

 In *Honeywell*, plaintiff protested award of an Army procurement to another bidder. The successful bidder requested a

determination from the Government Accounting Office (GAO). The GAO ruled in favor of the successful bidder, and the Army notified plaintiff that it would follow GAO's decision.

Plaintiff thereupon filed an action in the United States Claims Court to enjoin the Army from awarding the contract. The Claims Court reviewed the Army's reliance on the GAO decision and enjoined award of the contract. Specifically, the Claims Court concluded that GAO's recommendation was irrational.

The United States Court of Appeals for the Federal Circuit reversed the Claims Court, stating:

The Claims Court recognized that the controlling inquiry in deciding that question was whether the GAO's decision was a rational one. After paying lip service to that standard, however, the Claims Court impermissibly undertook what can fairly be characterized only as its own independent *de novo* determination....

*Honeywell*, 870 F.2d at 647. The Federal Circuit explained in *Honeywell* that GAO procurement recommendations deserve substantial deference by the judiciary. The Federal Circuit did not state, however, that the legal conclusions of GAO generally deserve deference. Rather, it reasoned that Congress delegated to GAO "an important role in the resolution of contested procurement decisions." *Id.* Specifically, in the Competition in Contracting Act, 31 U.S.C. § 3551 (1988), Congress codified GAO's involvement in the procurement process. Disappointed bidders may submit protests to the Comptroller General. 31 U.S.C. § 3552. The Comptroller then decides whether the solicitation and proposed award comports with applicable law. 31 U.S.C. § 3554. The Armed Forces may not award a contract until the Comptroller General renders such a decision. Thus, the Comptroller acts as an Administrative Law Judge in the context of bid protests.

Where Congress has made the Comptroller the initial step in the adjudicatory process, the Claims Court in a practical sense acts in an appellate capacity. The Federal Circuit's *Honeywell* opinion simply sug-

gests that the Claims Court should discern clear error before overturning an initial GAO determination.

In other words, the Comptroller General's decisions deserve some deference where Congress expressly places the GAO in the position of an adjudicative officer. Here, defendant has not shown an analogous scheme. Thus, this court reviews the SBP statutory scheme *de novo*, without deference to the Comptroller's opinions.

### *Judicial Review of Agency Decisions*

 This court must show deference to DOD's method of calculation. The Supreme Court stated: "We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer ..." *Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

 The question for this court is not whether it would have reached the same conclusion as DOD if the question occurred initially in a judicial proceeding. Rather, the question is whether "the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782. When Congress explicitly leaves a gap for an agency to fill, the agency has express authority to elucidate a provision of the statute by regulation. Courts should not disturb these regulations unless they are arbitrary, capricious, or manifestly contrary to the statute. *Id.* at 843–44, 104 S.Ct. at 2781–82. If the agency's regulatory choices are reasonable in view of the guidance that Congress provided by statute, then the court should not disturb the agency's decision. *United States v. Shimer*, 367 U.S. 374, 382, 383, 81 S.Ct. 1554, 1560, 1561, 6 L.Ed.2d 908 (1961); *see also, Croteau v. United States*, 823 F.2d 539, 540 n. 1 (Fed.Cir.1987).

 DOD's offset formula is reasonable in light of the guidance provided by Congress. DOD completely disregards all social security benefits except those attributable to the decedent's military service. This is a reasonable interpretation of 10 U.S.C. § 1451(e)(3), which states that the SBP annuity "shall be reduced by ... the amount of the survivor benefit ... to which the widow or widower would be entitled under ... the Social Security Act ... based solely upon service by the person concerned...." DOD's interpretation is further supported by the SBP legislative history.

### *Plaintiff's "Equity Formula"*

Plaintiff proposes an alternative to DOD's method of computation. Plaintiff has presented this alternative on the grounds that DOD's formula is not equitable. Plaintiff argues that her formula is preferable.

 Plaintiff cannot contend, however, that her method follows the language and intent of the law. The law does not allow the SBP to consider benefits on the basis of a retiree's lifetime social security-covered earnings. This court must interpret the language of the statute and apply the law as it finds it, absent constitutional defects. *Slotnick v. United States*, 8 Cl.Ct. 784, 788 (1985); *see Zucker v. United States*, 758 F.2d 637 (Fed.Cir.1985), *cert. denied*, 474 U.S. 842, 106 S.Ct. 129, 88 L.Ed.2d 105 (1985).

 In any event, DOD's formula is not inequitable as plaintiff contends. DOD's method does not consider post-retirement earnings. Consequently, it assures that survivors of military decedents who retired under similar circumstances receive the same SBP annuity.

### *Conclusion*

The plain language of 10 U.S.C. § 1451(e)(3) instructs DOD to consider only the decedent's social security earnings based on military service when calculating the SBP annuity. Moreover, this court appropriately defers to DOD's interpretation of the statute. DOD's interpretation is reasonable. Accordingly, this court grants defendant's motion for summary judgment and denies plaintiff's motion. The Clerk of

the Court is directed to enter judgment dismissing plaintiff's complaint.

No costs.