**Daniel FORD, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 93–534C.**

United States Court of Federal Claims.

June 14, 1995.

Daniel Ford, Roseville, CA, pro se.

John S. Groat, Washington, DC, with whom were Asst. Atty. General Frank W. Hunger, David M. Cohen, Director, and James M. Kinsella, Asst. Director. Patricia Kerns, Dept. of the Air Force, of counsel.

## OPINION

ROBINSON, Judge:

This matter is before the court on defendant's motion to dismiss or, in the alternative, for summary judgment.

Plaintiff Daniel Ford, an enlisted member of the United States Air Force, requested retraining in a career field that, at the time of his request, was designated by the Air Force as a critical skill under the selective re-enlistment bonus (SRB) program, 37 U.S.C. § 308 (1974). The SRB program was enacted to provide bonus pay to encourage those members of the military who qualified in a military skill designated as critical to re-enlist. After Mr. Ford extended his term of enlistment for purposes of retraining but before he began retraining, the Air Force removed his career field from its critical skills list. Mr. Ford then completed training and re-enlisted, but did not receive a re-enlistment bonus under the SRB program. Mr. Ford seeks back pay for what he contends was an invalid denial of an SRB. Defendant contends that Mr. Ford was not eligible to receive an SRB.

Oral argument was held on March 10, 1995. The case was stayed on March 31, 1995, for forty-five days to provide plaintiff the opportunity to supplement the record. Plaintiff failed to submit any additional information and the case is now ready for disposition. For the reasons that follow, the court grants defendant's motion.

### Background

Plaintiff first enlisted in the Air Force on September 1, 1970, for a four-year term scheduled to end on September 1, 1974. Prior to completing his first enlistment term, Mr. Ford extended his enlistment twice for a total of fourteen months, extending his term to October 30, 1975. On January 14, 1975, approximately three months after his second extension, Mr. Ford requested voluntary retraining. He designated two career fields of interest, both of which were identified by the Air Force at the time of Mr. Ford's request as "critical skills" for which SRBs were given. Mr. Ford's request for retraining included a provision stating that, if approved, he would either extend his enlistment or re-enlist in order to meet retainability requirements.[1]

The Air Force approved Mr. Ford's request for retraining on January 30, 1975, in career field 732XO, personnel specialist. Subsequently, on February 22, 1975, Mr. Ford executed a nine-month extension of his term to satisfy the retainability requirements, extending his term of service to July 31, 1976. Mr. Ford's extension agreement included a provision stating that the period of his extension could not be used in calculating an SRB.[2]

Four months after Mr. Ford extended his service, the Air Force removed career field 732XO from its critical skills list on July 1, 1975. On November 28, 1975, approximately five months later, Mr. Ford began his retraining; he completed his nine-week training on January 29, 1976, and voluntarily re-enlisted one month later on February 24, 1976, for an additional four years. The Air Force did not award Mr. Ford an SRB for his re-enlistment.[3] According to the Air

---

1. The retainability requirements for voluntary retraining were specified in ¶ 2–2(c) of Airman Retraining and Lateral Training Programs, Air Force Regulation (AFR) 39–4 (1974), which stated that in order for first-term airmen with at least 36 months of service to meet retainability requirements for voluntary retraining, airmen "must agree to extend their present enlistment at least 20 months beyond their original [estimated time of separation], regardless of the method of retraining...." Mr. Ford's original time of separation was September 1, 1974. In order to meet the retainability requirements as a first-term airman, he would have had to extend his service at least 20 months, or until May 1, 1976. Mr. Ford actually extended his term beyond this date, to July 31, 1976.

2. The extension agreement signed by Mr. Ford stated, "I understand that by executing this extension of enlistment, I have obligated myself for an additional period of service, which cannot be included in computing any selective reenlistment bonus, if I reenlist prior to completing the entire period of this extension." Personnel Record 37.

3. While Mr. Ford's claim may have accrued on February 29, 1976, when he re-enlisted and was not awarded an SRB, his suit is not barred by the applicable six-year statue of limitations, 28 U.S.C. § 2501 (1988), due to its tolling under the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.App. § 525. *See Cornetta v. United States,* 851 F.2d 1372, 1380 n. 2, 1384 (Fed.Cir.1988).

Force, Mr. Ford did not meet the requirements of § 308 for an SRB because he re-enlisted only after his specialty had been removed from the critical skills list.

In 1977, the Supreme Court rendered a decision affecting the administration of the bonus program and the granting of awards. In *United States v. Larionoff*, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977), the Court found that the relevant time for determining entitlement to a re-enlistment bonus was the time at which service members committed themselves to re-enlist or to serve an extended term.[4] Up to that time, the military had only awarded bonuses for skills that were listed as critical at the time service members began serving their re-enlistment or extended terms; that members had earlier obligated themselves to additional service at a time when their skills were designated as critical, did not make them eligible for a bonus. 431 U.S. at 870–72, 97 S.Ct. at 2155. The Court changed this policy by finding that service members were entitled to the bonus in effect "at the time they agreed to extend their enlistments." *Id.* at 877, 97 S.Ct. at 2158.

In 1978, after the Supreme Court's decision in *Larionoff*, 37 U.S.C. § 308 was amended, essentially to reflect that decision. As amended, under § 308 a service member's right to receive a bonus vests at the time the member is approved for retraining if the member simultaneously agrees to re-enlist and is otherwise qualified. 37 U.S.C. § 308(a)(2) (1978).

Mr. Ford made numerous applications to the Air Force Board for Correction of Military Records (Board) seeking back pay of an SRB for his four-year re-enlistment term. Mr. Ford first applied to the Board on September 25, 1981. Approximately one year later, on August 30, 1982, the Board denied Mr. Ford's request for an SRB, stating that

Mr. Ford was not entitled to an SRB because his re-enlistment was voluntary and career field 732XO was not on the critical skills list at the time he decided to re-enlist.

In November 1985, Mr. Ford requested the Board to reconsider its decision, arguing that he was entitled to the SRB because he had been approved for retraining before his skill was removed from the critical skills list. The Board denied Mr. Ford's request two years later on December 18, 1987. In December 1988, Mr. Ford returned to the Board again to request reconsideration of his application for an SRB. Again, on December 29, 1988, the Board denied Mr. Ford's request for reconsideration.

In October 1990, Mr. Ford made a third request to the Board to reconsider its decision, claiming that the 1978 amendment to the SRB program, which allowed retrainees to qualify for SRBs on the date they were approved for retraining, should be retroactive to 1974—the effective date of the SRB program. The Board reconsidered Mr. Ford's case, but denied his request for back pay on May 13, 1991, concluding that he had presented insufficient evidence of material error or injustice.

Mr. Ford retired from the Air Force on April 1, 1992, as a Master Sergeant. About one year later, on March 17, 1993, he again requested the Board to reconsider its decision. Again, the Board denied his request, and subsequently, Mr. Ford brought this action on August 25, 1993, seeking $44,000 in back pay and compensatory damages.

### Contentions of the Parties

Mr. Ford contends that he became entitled to an SRB on January 14, 1975, when he applied for retraining into career field 732XO, which on that date was on the critical skills list. Mr. Ford insists that such a result is mandated by the Supreme Courts'

---

4. The SRB program replaced the Variable Re-enlistment Bonus (VRB) program on June 1, 1974. The SRB program was enacted to serve the same purpose as the VRB program, *i.e.*, to encourage service members with desirable skills to re-enlist, but changed the eligibility requirements somewhat. *See* Administrative Record (AR) 59. For instance, to receive a bonus under the SRB program, service members were re-quired to re-enlist or extend their enlistment for a period of three years; under the VRB program that period was two years. *Compare* 37 U.S.C. § 308(a) (1974) *with* 37 U.S.C. § 308(a), (g) (1970). The Court in *Larionoff* was concerned with the VRB program, but for purposes of resolving the present case the two bonus programs are materially indistinguishable.

decision in *Larionoff*. Mr. Ford also contends that the 1978 amendment of 37 U.S.C. § 308 is retroactive and compels such a result. Mr. Ford argues that the underlying principle of both *Larionoff* and the 1978 amendment, that the time for determining whether a service member is entitled to a bonus should be the time at which the service member agrees to re-enlist, should apply to his case because he decided to re-enlist when he applied for retraining rather than when he actually re-enlisted.

Defendant responds that Mr. Ford's reliance on *Larionoff* is misplaced. Defendant insists that *Larionoff* is distinguishable because, in that case, the service members' entitlement to bonuses vested at the time of their requests for retraining because they had obligated themselves to re-enlist or extend their enlistments if their requests were approved. Defendant maintains that Mr. Ford was under no obligation to re-enlist because approval of his retraining request only required him to extend his enlistment nine months. Defendant further argues that Mr. Ford's nine month-extension fails to entitle him to an SRB because Mr. Ford's extension agreement provided that the extension was not to be used in calculating an SRB and because, under § 308, eligibility for payment of the SRB does not vest until a service member agrees to either re-enlist or extend his enlistment for a period of at least three years. Mr. Ford did not re-enlist for such a period until February 24, 1976, after career field 732XO had been removed from the critical skills list. Finally, defendant argues that the 1978 amendment to the SRB was not effective until October 1, 1978, after Mr. Ford's re-enlistment and is not retroactive.

### DISCUSSION

The court's jurisdiction is invoked under the Tucker Act which provides for the prosecution of monetary claims against the United States founded "either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States...." 28 U.S.C. § 1491(a)(1) (1994). Mr. Ford's claim is based upon 37 U.S.C. § 308 (1978), 37 U.S.C. § 308 (1974),[5] his request for retraining, and his four-year re-enlistment agreement of February 24, 1976.

■ When considering a defendant's motion to dismiss for failure to state a claim upon which relief can be granted, the plaintiff's factual allegations are taken as true and all reasonable inferences are drawn in favor of the plaintiff. *See, e.g., Papasan v. Allain*, 478 U.S. 265, 283, 106 S.Ct. 2932, 2943, 92 L.Ed.2d 209 (1986); *Marshall v. United States*, 21 Cl.Ct. 497, 499 (1990). The court may not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), *quoted in Kinne v. United States*, 21 Cl.Ct. 104, 107 (1990).

■ Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the plaintiff is entitled to judgment as a matter of law. RCFC 56(c). Only disputes over material facts, *i.e.*, facts that affect the outcome of the suit, preclude an entry of judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### 1. *Statutory basis for a re-enlistment bonus.*

#### A. *1974 SRB program.*

■ At the time of Mr. Ford's retraining and re-enlistment, the SRB program then in effect provided in pertinent part:

A member of a uniformed service who ... is designated as having a critical military skill ... and ... reenlists or voluntarily

---

**5.** In his complaint, Mr. Ford states that his action for recovery of an SRB is based on 37 U.S.C. § 308(g), but this provision was omitted when this section of the code was amended in 1974 by Pub.L. No. 93–277, 88 Stat. 119, when the SRB program was implemented. Since Mr. Ford is claiming that he is entitled to an SRB rather than a VRB, his claim must be based on a version of § 308 from 1974 or later. At the time Mr. Ford requested retraining, the 1974 amendment to 37 U.S.C. § 308 was in effect, which contained SRB provisions in § 308(a). As Mr. Ford bases his claim in part on the 1978 amendment to 37 U.S.C. § 308, this amendment also will be analyzed.

extends his enlistment in a regular component of the service concerned for a period of at least three years; may be paid a bonus. . . .

37 U.S.C. § 308(a) (1974). To be entitled to a bonus under this provision, members must have skills designated as critical and must voluntarily extend their enlistment for at least three years. Neither Mr. Ford's nine month-extension of service nor his four-year re-enlistment qualifies him for bonus pay under this statute.

At the time Mr. Ford was approved for retraining, in a skill which was then listed as critical as required by subsection (a), he extended his enlistment nine months. Nine months, however is less than the three years required to qualify for a bonus. Thus, under the statute, plaintiff is not entitled to an SRB based on his nine-month extension.[6]

Similarly, plaintiff is not entitled to an SRB based on his four-year re-enlistment. While four years satisfies the three-year requirement of subsection (a) found lacking in regards to his extension, Mr. Ford did not re-enlist until after his career field had been dropped from the critical skills list and, therefore, did not possess a "critical military skill" at the time he re-enlisted as also required. 37 U.S.C. § 308(a) (1974). Consequently, under the plain language of the statute, Mr. Ford fails to qualify for an SRB for either his nine-month extension or his four-year re-enlistment.

### B. *The 1978 Amendment to the SRB program.*

The 1978 amendment to § 308(a)(2), essentially codified the decision in *Larionoff.* The amended SRB program provided:

Notwithstanding paragraph (1)(B) of this subsection, a member who agrees to train and reenlist for service in a military skill which, at the time of that agreement, is designated as critical, may be paid the bonus approved for that skill, at the rate in effect at the time of agreement, upon completion of training and qualification in that skill, if otherwise qualified under this sub-

section and even if that skill is no longer designated as critical at the time the member becomes eligible for payment of the bonus.

37 U.S.C. § 308(a)(2) (1978).

Plaintiff argues that this amendment, even though it was enacted after his re-enlistment in 1976, should be applied to him retroactively and that under this amendment he is entitled to an SRB. Plaintiff, however, is incorrect on both points.

First, it is well settled that statutes are presumed to apply prospectively unless express language in the statute provides otherwise. Sutherland Stat. Const. § 41.04 (5th Ed.1993); *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208–09, 109 S.Ct. 468, 471–72, 102 L.Ed.2d 493 (1988); *United States v. Security Industrial Bank*, 459 U.S. 70, 79–80, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982). In the case of the 1978 amendment, nothing in the statute or legislative history suggests it was intended to be applied retroactively.

Secondly, Mr. Ford would fail to qualify for an SRB even if the court were to apply the amended statute retroactively. As amended, a member's right to a re-enlistment bonus under § 308 may vest at the time the member agrees to retrain if certain requirements are met. One of those requirements is that the member must agree to *both* train *and* re-enlist (or extend his enlistment). 37 U.S.C. § 308(a)(2) (1978). At the time Mr. Ford agreed to retrain he also agreed to extend his enlistment nine months. This nine-month extension, however, does not satisfy the re-enlistment requirement.

Amended § 308(a)(2) also requires the member to be "otherwise qualified" under subsection (a) to receive a bonus; subsection (a)(1) provides that the member "reenlists or voluntarily extends his enlistment in a regular component of the service concerned *for a period of at least three years.*" 37 U.S.C. § 308(a)(1)(D) (1978) (emphasis added). Thus, as was true with the 1974 SRB pro-

---

6. The court undertakes this analysis only for purposes of thoroughness, recognizing that, in any event, Mr. Ford agreed in his extension agreement that this nine-month period would not be used in calculating an SRB.

gram, Mr. Ford's nine-month extension fails to satisfy this length of service requirement.

Mr. Ford's four-year re-enlistment also fails to satisfy the requirements of the amended SRB program. As previously stated, § 308(a)(2) as amended requires that a member simultaneously agrees to retrain and to re-enlist. Mr. Ford's re-enlistment occurred a full year after he agreed to retrain.[7] Moreover, plaintiff has failed to produce any re-enlistment agreement contemporaneous with his retraining agreement.

■ Plaintiff has pointed to nothing in the record showing that, at the time he agreed to retrain, he in any way agreed or obligated himself to re-enlist or that his re-enlistment was anything other than voluntary, nor has Mr. Ford shown that he could adduce such evidence. Indeed, upon motion of plaintiff, the court stayed this case for forty-five days after oral argument to give plaintiff the opportunity to present any evidence which might tend to show that he in any way agreed to re-enlist or was in any way obligated to re-enlist at the time he agreed to retrain. Plaintiff, however, did not produce any such evidence.

Thus, the court finds plaintiff's re-enlistment to have been voluntary and not a result of any binding agreement entered into at the time plaintiff agreed to retrain. Plaintiff's unsupported assertion to the contrary, moreover, does not create a factual issue to defeat a motion for summary judgment.

In sum, Mr. Ford does not qualify for an SRB under the original or amended SRB program (if the court were to apply it retroactively) because at the time he agreed to retrain he did not agree to re-enlist or extend his enlistment for a period of three years. When Mr. Ford re-enlisted for a term of four years in February 1976, he was under no obligation to do so and did so knowing his skill was no longer designated critical.

## 2. *Larionoff.*

Plaintiff also contends that he is entitled to an SRB under the Supreme Court's reasoning in *Larionoff,* discussed earlier. Because of plaintiff's heavy reliance on this case, the court will revisit it in detail.

In *Larionoff* the respondents were a class of seven similarly situated enlisted members of the United States Navy. Respondent Nicholas J. Larionoff had requested to participate in a Navy training program which, upon completion, would qualify him as a Communications Technician—Maintenance (CTM). 431 U.S. at 867, 97 S.Ct. at 2153. At the time of Mr. Larionoff's request for training, the CTM was identified by the Navy as a "critical skill" for which the highest re-enlistment bonus would apply at that time.[8] Before Mr. Larionoff could enter the training program, however, the Navy required him to enter a written agreement promising to extend his enlistment six years "in consideration of the pay, allowances, and benefits which [would] accrue to [him] during the continuance of [his] service." 431 U.S. at 867, 97 S.Ct. at 2153. Mr. Larionoff completed his training and was advanced to the rating of CTM, but approximately one year before his extended enlistment term was scheduled to begin, the Navy removed the CTM rating from its critical skills list. *Id.* at 867–77, 97 S.Ct. at 2153–58. By that time, however, Mr. Larionoff was bound by agreement to extend his enlistment.

The Navy did not award Mr. Larionoff a re-enlistment bonus when he started serving his extended term because at that time his skill was no longer designated as critical. According to the Navy, a member was only entitled to receive the re-enlistment bonus in effect at the time the member began to serve an extended enlistment. *Id.* at 872, 97 S.Ct. at 2155.

The Supreme Court examined the legislative history of the bonus program and concluded that its underlying objective was to induce service members with desirable skills

---

7. Mr. Ford's agreement for retraining was finalized on February 22, 1975, when he extended his service nine months to meet retainability requirements. He re-enlisted one year later on February 24, 1976.

8. See note 4, *supra.*

"to extend their period of service beyond their original enlistment" and that it did so by concentrating re-enlistment incentives "at just the time that it will be most effective, when an individual decides whether or not to reenlist." *Id.* at 874, 97 S.Ct. at 2156 (quoting remarks of Rep. Nedzi, 111 Cong.Rec. 17201 (1965)). The Court went on to find that, in order to effectuate this purpose, the relevant time for determining the level of bonus to be awarded was the time at which service members agree to re-enlist or extend their enlistment. According to the Court, the bonus program "could only be effective as a selective incentive to extension of service if at the time [a service member] made his decision the service member could count on receiving [the bonus] if he elected to remain in the service." 431 U.S. at 875–76, 97 S.Ct. at 2157. On this basis, the court held for the service members because, at the time they entered into a written agreement to extend their enlistment, their skills were designated as critical.

█ The present case differs critically from *Larionoff* in this respect: Mr. Ford had not committed himself by written agreement to service with the Air Force at a time when his skill was listed as critical for more than his nine-month retainability period for which he agreed an SRB was not due. Unlike the service members in *Larionoff*, and as the court previously discussed, at the time Mr. Ford re-enlisted for four years he was under no obligation to re-enlist.

Mr. Ford acknowledges that his case is different from *Larionoff* in that he was not allowed to execute a re-enlistment agreement prior to attending training school. Nonetheless, Mr. Ford argues that his retraining agreement should be considered a re-enlistment agreement of the type in *Larionoff*. Mr. Ford argues that when he signed the retraining agreement he agreed to re-enlist or extend his enlistment to satisfy the retainability requirements which, according to Mr.

Ford, included a nine-month extension period and three-year re-enlistment period.

Mr. Ford's request for retraining included the statement that "I have read and understand AFM 39–4 concerning retainability criteria for retraining. Upon approval of retraining, I will extend or re-enlist to meet retainability requirements." AR 125. As discussed earlier,[9] according to the Air Force regulations then in effect[10] in order to meet retainability requirements for voluntary retraining, Mr. Ford had to agree to extend his enlistment twenty months beyond his original separation date. AFR 39–4, ¶ 2–2(c)(2) (1974). Since Mr. Ford's original separation date was September 1, 1974, he was required to extend his service to at least May 1, 1976, to satisfy the retainability requirements. Mr. Ford's nine-month extension, extending his term of service to July 31, 1976, satisfied this requirement. Thus, when Mr. Ford re-enlisted on February 24, 1976, he was not obligated to do so by virtue of the retainability requirements or his retraining approval. At the time Mr. Ford re-enlisted, the Air Force could not have forced him to serve another term. As a result, Mr. Ford did not make the critical decision to commit to the Air Force at the time he applied for retraining. Rather, he chose to re-enlist after he knew his skill was no longer designated as critical.

█ Finally, even if the court found that Mr. Ford was entitled to back-pay for his lost SRB, he would be entitled only to damages in the actual amount of the SRB plus any accrued interest. Consequential damages, damages for the loss of future profits or "missed opportunities for investment growth," Compl. ¶ 3, are not recoverable. *Olin Jones Sand Co. v. United States*, 225 Ct.Cl. 741, 744, 1980 WL 13211 (1980); *Northern Helex Co. v. United States*, 207 Ct.Cl. 862, 886, 524 F.2d 707, 720 (1975), *cert. denied*, 429 U.S. 866, 97 S.Ct. 176, 50 L.Ed.2d 146 (1976); *Lucas v. United States*, 25 Cl.Ct. 298, 310–11 (1992); *Solar Turbines*,

---

9. See note 1, *supra.*

10. The pre-printed form Mr. Ford used to request retraining identified the regulations at AFM (Air Force Manual) 39–4. By 1974, prior to Mr. Ford's request for retraining, the applicable regulations were entitled AFR (Air Force Regulation) 39–4. Since these were the regulations Mr. Ford was subject to, the court uses AFR 39–4 in its analysis.

*Inc. v. United States,* 23 Cl.Ct. 142, 159–60 (1991). Thus, even if Mr. Ford could show a valid basis for his complaint, any consequential damages he alleges in his complaint would be denied.

### CONCLUSION

For the reasons stated, defendant's motion for summary judgment is granted. The Clerk is directed to enter judgment accordingly. No costs.